plaint, and for further proceedings in accordance with this opinion.

---

WEYER, ADM'R, *v.* THE SECOND NATIONAL BANK OF
FRANKLIN ET AL.

DECEDENTS' ESTATES.—*Executor and Administrator.*—*Power of, over Personal Property.*—*Common Law.*—At common law, an executor or administrator had the same property in, and power over, the personal property of a decedent, as did the latter himself in his lifetime, but that power has been limited in this State by legislation.

SAME.—The common law, except where it is inconsistent with the constitutions of the United States and of this State, and with the statutes of Congress and of this State, has always been, and is, the law of this State.

SAME.—*Public Sale.*—*How Avoided.*—*Fraud.*—Where personal property belonging to a decedent's estate is sold at public sale by the executor or administrator, the purchaser thereby acquires the same title thereto as was had by the decedent in his lifetime, though the sale may be wholly unnecessary; and such sale can only be avoided for fraud or collusion practised by the executor or administrator and the purchaser.

SAME.—*Private Sale.*—An executor or administrator must sell the personal property of his decedent's estate at public auction only, unless, upon application to the proper court, he obtains an order authorizing a private sale.

SAME.—*National Bank Stock.*—*How Transferable.*—*Private Sale of.*—*Purchaser.* —*Principal and Agent.*—*Pleading.*—An executor, who was also one of the directors of a certain national bank, without being authorized so to do by either the terms of his testator's will or the order of any court, and without its being necessary for the payment of debts, sold to a purchaser, at private sale, without notice, certain shares of stock in such bank belonging to his testator, and assigned and transferred the certificate of stock to the purchaser, taking therefor the promissory note of the latter, which was subsequently paid to the executor, who converted the same to his own use. Such sale was never reported to, nor confirmed by, any court, and the executor sat with the board of directors of such bank, and voted with them, in making a transfer of such stock, upon the books of the bank, to the purchaser, though no new certificate of stock was issued to him. Such executor, and his sureties, becoming insolvent, he was removed and his successor appointed, who brought an action against such bank and purchaser, to have such sale and transfer set aside, and to compel the issuance to him, as executor, of a certificate of such stock, or to

recover the value of the same, alleging in his complaint the foregoing facts, and that he had made demand of the defendants.

Held, on demurrer to the complaint, that such stock was personal property belonging to such estate.

Held, also, that the section of the statute making promissory notes negotiable by endorsement (1 R. S. 1876, p. 635, sec. 1,) is not applicable to the sale and transfer of a certificate of bank-stock.

Held, also, that, by the 12th section of the act of Congress approved June 3d, 1864, (R. S. U. S., p. 999, sec. 5139,) in relation to the incorporation of national banks, shares of stock in any such bank are transferable only on the books of the bank.

Held, also, that the endorsement of such certificate, and the transfer of such stock, by the executor passed no title to the purchaser.

Held, also, that the purchaser at such sale was bound to know whether or not such executor had power to make the sale.

Held, also, that where one person assumes to have the right to dispose of the property of another, the purchaser buys at his peril.

Held, also, that the complaint is sufficient.

From the Johnson Circuit Court.

C. A. Korbly, for appellant.

T. W. Woollen, G. M. Overstreet, A. B. Hunter, C. Baker, O. B. Hord and A. W. Hendricks, for appellees.

HOWK, J.—The appellant, as plaintiff, sued the appellees, as defendants, in the court below.

Each of the appellees demurred separately to the appellant's complaint, for the want of sufficient facts therein to constitute a cause of action; each of which demurrers was sustained by the court below, and to these decisions the appellant excepted. And thereupon judgment was rendered by the court below, upon said demurrers, in favor of the appellees and against the appellant, from which this appeal is here prosecuted.

In this court, the appellant has assigned, as alleged errors, the decisions of the court below upon the separate demurrers of the appellees to appellant's complaint. The questions thereby presented for our consideration relate exclusively to the sufficiency of the facts stated in said complaint to constitute a cause of action. To the proper consideration of these questions, a summary, at least, of

the facts alleged in appellant's complaint is indispensable; and we therefore adopt the abstract of the complaint in appellant's argument, which we have found, by comparison, to be substantially correct.

The complaint alleges substantially, that the testatrix, Ruth B. Shippen, deceased, in her lifetime, was the owner of fifty shares of stock in the Second National Bank of Franklin, for which she held a certificate dated December 13th, 1865, signed by the president and cashier, and sealed with the corporate seal of said banking corporation.

That said testatrix died February 16th, 1868, the owner of said stock; that her will was duly proved, and admitted to probate, on the 31st day of March, 1868; that, by her said will, she appointed Edwin G. Whitney her executor, to whom letters testamentary were issued by the clerk of the common pleas court of Jefferson County, Indiana, where the will was proved; that said letters were confirmed by said court, and said Whitney qualified as such executor.

That said certificate of stock came to his hands as executor and was inventoried and appraised by him.

That on the 17th day of January, 1872, the said Edwin G. Whitney sold at private sale, without any notice whatever, said fifty shares of stock in said bank to the defendant William C. Wheat; that said Whitney did not, before making such sale, obtain an order from the Jefferson Common Pleas Court, or any other court, authorizing such private sale.

That, pursuant to such sale, said Whitney as executor transferred said certificate of stock to said William C. Wheat for a large sum of money, to wit, —— dollars, for which said Wheat gave said Whitney his note payable in thirty days, which he afterward paid said Whitney; that said transfer was made by a blank indorsement, as follows:

"E. G. Whitney, executor under the will of the estate of Ruth B. Shippen."

And said certificate, so endorsed, was delivered to said Wheat, who surrendered the same to said bank, which, by a two-thirds' vote of its board of directors, transferred said stock from the name of Ruth B. Shippen to said William C. Wheat; but said bank did not then, and has not since, issued a new certificate to said Wheat.

That said Edwin G. Whitney made no report of the said sale of said stock to said court, or any other court, but converted the proceeds of the sale of the same to his own use, and became wholly insolvent, and the legatees named in said will received no manner of benefit from said sale or the proceeds thereof. And the sole legatees of said testatrix at the time of said sale were, and still are, minors of tender years, and were until a long time after said sale, to wit, until the year 1875, without guardianship.

That said sale of stock was not necessary for the payment of debts or for any other purpose under said will, which contains no power or direction of sale whatever; that said Edwin G. Whitney had no interest in said estate other than a naked trust as executor; that said sale was in no manner confirmed by said court; that said Whitney, at the time of said sale, was a director of said bank and a stockholder therein, and, as such director, sat with the board of directors and voted upon the transfer of said stock.

That said Whitney became insolvent, and, his surety upon his bond as executor having become insolvent and being out of the jurisdiction of the State of Indiana, said Whitney was removed from his trust as such executor by the judgment of the Jefferson Circuit Court, at its February term, 1875; that afterward, to wit, on the 22d day of March, 1875, said court appointed the plaintiff administrator, with the will annexed, *de bonis non,* of the said estate of Ruth B. Shippen, deceased, and he qualified as such administrator; that plaintiff made demand before bringing this suit.

That said stock, at the time of said sale, was worth seven thousand five hundred dollars, and that said bank has declared dividends thereon since that time, amounting to two thousand five hundred dollars, which said Wheat received.

Upon the facts alleged in his complaint, the appellant prayed judgment, that said transfer of said shares of stock be decreed to be null and void, and that the appellees be compelled to re-transfer the same to the estate of said Ruth B. Shippen, and that the said bank, appellee, be compelled to reissue a certificate for said fifty shares of stock to the appellant, as administrator, etc., of said estate; or, if that could not be done, then for judgment for the value of said stock, to wit, for seven thousand five hundred dollars, against said bank, and that an account be taken of the dividends declared on said stock, and that the appellant recover judgment for the amount of said dividends, with interest thereon from the time they were severally declared, and for other proper relief.

The real question presented by the record of this cause, and by appellant's assignment of errors thereon, for our consideration, may be thus stated: Were the sale and transfer of the bank-stock, described in the complaint, a valid, legal and binding sale and transfer, or were they inoperative and void?

By the 12th section of the act of Congress, approved June 3d, 1864, under which the appellee The Second National Bank of Franklin was incorporated, it is provided, that the capital stock of such a bank "shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association." Acts of Congress 1864, p. 102; R. S. U. S., p. 999, sec. 5139.

The shares of bank-stock described in appellant's complaint in this action, at the death of Ruth B. Shippen, were personal property belonging to the estate of said

decedent. It was averred in appellant's complaint, and admitted by appellees' demurrers thereto, that the will of said decedent gave no power or direction whatever for the sale of said bank-stock to the executor named in the will. It follows, therefore, that the proper answer to the question before stated involves the consideration of, and depends upon, the powers of an executor or administrator, under the law of this State, over the personal property which belongs to his decedent's estate. We say " executor or administrator," because the law is, that, after administration has been granted, " the power of an administrator is equal to, and with, the power of an executor." 2 Williams Executors, 6th Am. ed., p. 992.

At common law, an executor or administrator had the same property in, and, of course, the same powers over, the personal effects or estate of his decedent, that such decedent had at and before his death. In *Whale* v. *Booth,* 4 T. R. 625, note *a,* Lord MANSFIELD, C. J., said : " The general rule both of law and equity is clear, that an executor may dispose of the assets of the testator; that over them he has absolute power; and that they can not be followed by the testator's creditors."

The common law, except in so far as it may be inconsistent or in conflict with the constitutions of the United States and of this State, and the acts of Congress and the statutes of this State, is, and always has been, the law of this State. But it may be well doubted, if an executor or administrator ever had, in this State, the same absolute property in, or power over, the personal effects or estate of his decedent as at common law. However that may be, it is very certain that the power of an executor or administrator over the personal property of his decedent has been for many years past, and is now, in this State, limited and confined by legislative enactment. And that the common-law rule in regard to the absolute property of an executor or administrator in, or his absolute power over, the personal effects or estate of his decedent, is not,

and has not been since May 6th, 1853, the law of this State, is conclusively shown, in our opinion, by the first section of "An act regulating descents and the apportionment of estates," approved May 14th, 1852, whereby it was and is provided, that the "personal property of any person dying intestate, shall descend to his or her children in equal proportions." 1 R. S. 1876, p. 408, sec. 1. The power to sell the personal property of the decedent, with certain exceptions, still exists in the executor or administrator, but the modes of sale and the power to sell are given and prescribed by statute.

The power to sell the personal property of a decedent in this State is a power conferred by the proper court, or the clerk thereof, acting under and in pursuance of the provisions of "An act providing for the settlement of decedents' estates," etc., approved June 17th, 1852. 2 R. S. 1876, p. 491.

The issuance of letters testamentary to an executor, or of letters of administration to an administrator, by such court or clerk, will authorize, and make it the duty, of the executor or administrator to sell the personal property of his decedent, with certain exceptions, at public auction, as provided in sections 48 and 49 of said last mentioned act, and in section 2 of "An act to repeal" the 50th section of said act of June 17th, 1852, " and providing for credit on the sale of personal property," etc., approved March 1st, 1855. 2 R. S. 1876, p. 509, and note.

If an executor or administrator should sell at public auction the personal property of his decedent, or any part thereof, as provided for in the sections last mentioned, there could be no doubt, we apprehend, that the purchaser would thereby acquire such title as the decedent had when living to the property purchased, even if the sale was wholly unnecessary. Nothing but fraud or collusion between the executor or administrator and the purchaser, in which both participated, would avoid a sale so made. But the sale of the bank-stock described in appel-

lant's complaint was not made at public auction by the executor of the decedent, to the appellee William C. Wheat, as provided for in said last mentioned sections. It was a private sale, confessedly made by the executor without any necessity whatever therefor, without any of the formalities or proceedings required by law for the making of such sale, without any authority to the executor to make such sale, except such, if any, as may have been conferred by his letters testamentary, and from which sale the legatees or heirs at law of the decedent have never derived, and can not possibly derive, any benefit whatever.

Our inquiry now is, whether or not such a sale as the one we have just described is valid, legal and conclusive upon the rights of all parties interested, under the law of this State. The answer to this inquiry depends chiefly upon the construction given to the 60th section of the act providing for the settlement of decedents' estates, etc., before referred to. This section is as follows:

" Sec. 60. Whenever the court of common pleas shall be satisfied that.it would be for the advantage of such estate to sell any part of the personal property thereof at private sale, such court may authorize the executor or administrator to thus sell the same; but such property shall in no case be sold for less than its appraised value; nor shall such executor or administrator become the purchaser thereof; and a return of such sale shall be made within the time prescribed by the court, not to extend beyond three months; and bond, with approved surety, shall be taken for the purchase-money, as in case of public sales." 2 R. S. 1876, p. 512.

This section, with the exception of the provision for making a return of such sales, is a substantial reenactment of sections 169 and 170 of chapter 30 of the Rev. Stat. 1843, p. 518, which continued to be the law on the subject thereof until the enactment of said section 60. As indicative, to some extent, of the legislative will and intention in the enactment of said section 60, reference is made

to form "No. 25.—Petition for private sale of decedent's personal estate." 2 R. S. 1876, p. 564. By this form, the executor or administrator is required to make oath that it would be advantageous to the estate of his decedent that the personal property mentioned should be sold at private sale, in his petition to the proper court for an order authorizing him to make such sale. And of this form and others there given it is provided, in and by the 194th section of the said act of June 17th, 1852, that "The following forms shall be substantially adopted, wherever they are applicable, in the execution of a will, or administration of an estate of a decedent, the names therein being changed to suit each particular case." 2 R. S. 1876, p. 558.

Much learning has been displayed in the able and exhaustive briefs of counsel on both sides of this cause, in the discussion of the question, whether the provisions of said section 60, before cited, should be regarded as mandatory, or as merely directory. It is unnecessary for us to follow them in this discussion, or to consider in detail the numerous authorities with which counsel on each side have supported their respective positions. It is clear to our minds, that our statute providing for the settlement of decedents' estates, and our statute regulating descents, are both repugnant to and inconsistent with the common-law doctrine of the absolute property of an executor or administrator in, or of his absolute power over, the personal effects or estate of his decedent. Where this repugnancy or inconsistency exists, of course the statute must prevail and constitute the law. Here, the personal property of a decedent is the property of such decedent's estate, and, at most, his executor or administrator has but a qualified power over such property. He may sell such personal property it is true, but he must sell the same at public auction, and can not sell it otherwise, unless, upon application to the proper court, he obtains an order authorizing a private sale. His position or office of execu-

tor or administrator confers on him no other power or authority over his decedent's estate than the law, under which he holds his office or position, confers. And, if further power or authority over said estate is desired or necessary for any purpose, such executor or administrator can only obtain the same by an order of the court by which he was appointed, in a proper case, to be shown by his verified petition, and other proof if required. So the law is and has been written in this State for more than thirty years past; and so, we think, it ought to be construed in the interest of every citizen and of those who are to come after him. The estates of the dead are a trust to the courts, and every legal safeguard to their proper administration ought to be faithfully sustained. In the case of *French* v. *Edwards*, 13 Wal. 506, in discussing the subject of mandatory and directory statutes, the Supreme Court of the United States, MR. JUSTICE FIELD delivering the opinion, use this language: "But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

This is good doctrine, well stated, supported by authority, and is applicable to the section of our statute which we have been considering. For the reasons given, we hold that section 60 of the act providing for the settlement of decedents' estates, etc., is mandatory in its provisions, and that an executor or administrator can not sell the personal property of his decedent, or any part thereof, at private sale, without having been authorized so to do by an order of the court having jurisdiction of the administration of his decedent's estate.

In the case of *Ramey* v. *McCain*, 51 Ind. 496, it was

held by this court, that an administrator could not maintain an action for the price of personal property of his decedent's estate, sold and delivered by the administrator at private sale, where it did not appear that the property had been duly appraised, and that the administrator had been authorized by the proper order of the proper court to sell said personal property at private sale.

It is said, however, that, even if said section 60 is mandatory in its requirements, yet a certificate of bank-stock, like a promissory note, is a mere chose in action; and that, as it has been held by this court that the assignment or indorsement of a note by the executor or administrator of the payee was sufficient to authorize an action by the assignee or indorsee against the maker, therefore the indorsement of the certificate of bank-stock in this case, it must be held, was sufficient to pass the title to said stock to the indorsee of said certificate. In the case of *Thomas* v. *Reister*, 3 Ind. 369, and in the case of *Hamrick* v. *Craven*, 39 Ind. 241, upon the authority of the former case, it was held by this court, that an executor or administrator could transfer by assignment a note due to his decedent, so as to vest the title thereto in the assignee. But it does not appear from the opinion in either of those cases, that the power of an executor or administrator to sell at private sale promissory notes, due or to become due to his decedent's estate, without an order of the proper court authorizing such sale, was a question presented to, or considered by, the court. We do not think, however, that the cases cited have even the slightest bearing on the case at bar. The difference between a promissory note and a certificate of bank-stock is so wide and marked, that a rule of law governing the transfer of the former is by no means applicable to the latter. It is provided by statute, in this State, that promissory notes "shall be negotiable by endorsement thereon, so as to vest the property thereof in each endorsee successively." 1 R. S. 1876, p. 635, sec. 1. But this statute, broad and comprehensive as

are its terms, has no application whatever to certificates of corporation stock; nor have we any statutory provision which makes such certificates negotiable by assignment or endorsement thereon, so as to vest any title to the shares of stock therein mentioned in the assignee or indorsee of such certificate. Indeed, by the express terms of the act of Congress, under which the appellee, the Bank, is incorporated, its shares of stock are transferable only on the books of the bank. In the case of *The Mechanics' Bank* v. *The New York, etc., R. R. Co.*, 13 N. Y. 599, the Court of Appeals of New York, COMSTOCK, J., delivering the opinion, say, on page 627: " Certificates of stock are not securities for money in any sense, much less are they negotiable securities. They are simply the muniments and evidence of the holder's title to a given share in the property and franchises of the corporation of which he is a member."

And even as to promissory notes the endorsement or assignment thereof by an executor or administrator will not, in all cases, pass the title of his decedent's estate therein to the endorsee or assignee thereof. In the case of *Thomasson* v. *Brown*, 43 Ind. 203, it was held by this court, that an administrator could not barter and assign promissory notes belonging to his decedent's estate, for goods for his own use; and if the assignee had knowledge, even from the nature of the transaction, that the administrator was thus acting in violation of his trust, the right of property in the notes would not be divested, and the assignee could not hold the notes or profit by his purchase, as against the creditors or heirs of the decedent.

It is very clear, we think, that the blank endorsement by the executor, set out in the complaint in this case, of the certificate of bank-stock mentioned therein, was insufficient to pass any title in or to said stock to the endorsee of said certificate. But it is alleged in said complaint, that the executor of Ruth B. Shippen " made a

similar transfer on the books of the bank." This latter transfer, we apprehend, would have been sufficient to pass the title of the decedent's estate in and to said bank-stock, if the executor had been authorized by an order. of the proper court to make such transfer.

The appellees in this case were bound to know that the executor of Mrs. Shippen could not make a valid and legal sale and transfer of said bank-stock, at private sale, until he had first been authorized so to do, by an order of the proper court; for such was and is the law of this State, which its citizens, individual or corporate, are conclusively presumed to know. When, therefore, the executor proposed to sell and transfer said bank-stock, at private sale, it seems to us, that common prudence should have dictated to each of the appellees an enquiry into the executor's power and authority to make any such sale. True, he was one of the directors of the bank, and it may have been that the appellees had unbounded confidence, and perhaps rightfully so, in his integrity; but this confidence should not have induced them to forget one of the plainest rules of business, and that is, that where one assumes to dispose of the property of another, whether that other be living or dead, the acting party should always be required to produce and prove his authority. If, in the lifetime of Ruth B. Shippen, the party whom she named as executor of her will had assumed to sell and transfer said bank-stock, it can hardly be presumed that the appellee Wheat would have purchased and paid for said stock, or that the appellee, the Bank, would have allowed a transfer of said stock, without the production of an express authority therefor from Mrs. Shippen. Now suppose that, in such a case, the party assuming to sell had produced a power of attorney from Mrs. Shippen, authorizing him to sell the stock at public auction; could any one have been induced to believe, that a private sale and transfer of said stock by the attorney in fact would be a valid and legal sale and

transfer, and binding on Mrs. Shippen? Suppose, however, that the power of attorney, which authorized and directed the sale of the stock at public auction, had contained a clause to the effect, that, if the judge of a certain court would certify that the private sale of the stock would be of advantage to her, then her attorney might sell at private sale; it is improbable, that any one would have purchased the stock from the attorney at private sale, without the production of the certificate mentioned, for the reason, that, if no such certificate had been given, the sale would have been without authority and of no binding force.

It is alleged in appellant's complaint, that the executor of the decedent, " at the time of said sale and transfer of said stock, was a stockholder of said bank, in his own individual right, and a director thereof, and as such sat with the board of directors at the time they ordered the transfer of such stock to the said Wheat, on the books of said bank." It is manifest, we think, that, under the averments of the complaint, the executor, who was also a director, must have known that he had no authority whatever to make the said sale and transfer of said stock, and that, in so doing, he was violating the trust and confidence reposed in him by the dead, to the injury of the living, whose infancy prevented them from taking care of their property. Just how far the appellee, the Bank, is affected and bound by the knowledge of its director, is a question in regard to which the authorities are in much confusion. It is a question, which perhaps we need not decide in this case. For we do not doubt, that where one purchases stock, belonging to a decedent's estate, from a person claiming to be such decedent's executor or administrator, at private sale, in this State, the purchaser is bound to know that such sale has been authorized by the proper order of the proper court, or he buys at his peril. And the plain legal duty of a bank or other corporation to its stockholders is, that such bank

or other corporation should never permit any other person than the stockholder in person to transfer stock on its books, without the production and proof of the authority so to do. Angell & Ames Corp., 10th ed., p. 588, sec. 582.

In conclusion, our opinion is, that appellant's complaint stated facts sufficient to constitute a cause of action against each of the appellees, and that the court below erred in sustaining their respective demurrers to said complaint.

The judgment of the court below is reversed, and the cause is remanded, with instructions to overrule the demurrers to the complaint, and for further proceedings.

Petition for a rehearing overruled.