INTERSTATE PUBLIC SERVICE COMPANY *v.* WEISS, ADMINISTRATOR.

[No. 26,505.   Filed December 27, 1934.   Rehearing denied April 8, 1935.]

*William P. Evans, Frazer & Headley,* and *Vanderveer & Vanderveer,* for appellant.

*Claude D. Carson,* for appellee.

ROLL, J.—Appellee, by his complaint, charged in substance that George H. Grise, during his lifetime, purchased thirty-five shares of prior lien stock from appellant from which two certificates therefor were issued to him; that George H. Grise died testate on the first day of July, 1926, the owner of this stock; that his will was admitted to probate in the Marshall Circuit Court and letters testamentary were issued to his son, John F. Grise, who was named an executor in the will; that the two certificates for said thirty-five shares came into the hands of the executor and were inventoried but not appraised by him; that on the 26th day of January, 1927, the executor, John F. Grise, sold at private sale, without notice and without first obtaining an order from the Marshall Circuit Court authorizing said executor to make sale of said thirty-five shares of stock to parties unknown to appellee, and pursuant to said sale the executor transferred said certificates of stock to parties unknown for approximately $3,700.00; that appellant,

to the best knowledge and belief of appellee, paid said sum by check to the said John F. Grise as executor, and that said John F. Grise, as such executor, after endorsing said certificates of stock in blank, delivered the same to appellant and surrendered them for cancellation; that appellant cancelled said certificates on the books of the company.

That the executor made no report of the sale of said stock to the Marshall Circuit Court, but converted the proceeds of said sale to his own use with the result that the legatees named in the will received no benefit from such sale, or the proceeds thereof; that the will of George H. Grise made no disposition of said stock and gave no directions for the sale thereof.

The complaint further charged that the executor was ordered to make report to the court and account for the proceeds of said sale to the estate, but that he failed and refused to do so. That appellee herein was thereafter appointed administrator *de bonis non* with the will annexed and qualified as such. That before bringing this action, demand was made upon appellant to account to him for said stock or the value thereof which it refused to do and that said stock was worth $3,700.00.

To this complaint appellant filed an answer in general denial, and among other paragraphs of answer, not material here, appellant filed its amended fourth paragraph of answer to which appellee filed a demurrer, which was sustained by the court. The sustaining of the demurrer to this paragraph of answer raises the only question presented by this appeal.

The amended fourth paragraph of answer alleges in substance that on the 8th day of February, 1926 (1922?), appellant sold to George H. Grise, thirty shares of its 7% prior lien stock, and issued a certificate to him for the same, and on October 1, 1922, he pur-

chased five shares for which a certificate was issued to him. The total consideration for all the stock was about $3,590.00. That said stock was sold and the certificates therefor issued to the said George H. Grise upon an express oral agreement, which in substance provided: that the said George H. Grise, his heirs, representatives, administrators, or assigns had the right or option of returning and surrendering said certificates of stock to appellant at any time in the future, in which event appellant would pay to the said George H. Grise an amount of money equal to the then prevailing market price (including dividends) thereof at the time said certificates were so returned, less a brokerage fee of two dollars per share to cover cost and expenses of selling said stock to someone else; that George H. Grise died testate on July 1, 1926, the owner and in possession of said certificates of stock; that the will of said George H. Grise was duly admitted to probate in the Marshall Circuit Court on July 6, 1926, and John F. Grise, who was named in the will as executor, was appointed, gave bond, and qualified as such executor; that said certificates of stock came into the possession of said executor, and on January 26, 1927, pursuant to the terms of the agreement above set out, he presented to appellant his letters testamentary and at the same time presented said certificates of stock to appellant and demanded that the issuance of said stock be rescinded and set aside and that appellant accept the return thereof; that appellant, upon such demand being made, and in compliance with the terms of its agreement and contract, paid to John F. Grise as such executor the then prevailing market price for such stock, which included accrued dividends and less a two-dollar charge per share to cover the expense of selling said stock to some one other than the then owner. That payment was made by executing two checks payable to

George H. Grise, one for $3,103.80 and the other $517.30, which amounts represented the then market price including accrued dividends and less $2.00 per share brokerage fee. That said checks were delivered to and accepted by John F. Grise, who endorsed said checks and presented the same to the bank for payment, and received the money therefor. That appellant accepted the certificates of stock and cancelled the same on the books of the company. That at the time of the above transaction appellant had no knowledge of any intention on the part of the said John F. Grise to convert the proceeds or any part thereof to his own use. That appellant was at the time of the above transaction and is now fully solvent, and not in default as to any of its obligations to anyone.

Appellee's demurrer to this answer was for insufficient facts.

To support the court's ruling in sustaining the demurrer, appellee takes two positions, (1) that the answer was no more than on a special or argumentative denial, and that all the facts pleaded therein was admissible under its general denial, and therefore it was harmless error to sustain the demurrer, (2) that the facts pleaded were no defense to the action.

As to whether or not the facts set out in appellant's amended fourth paragraph of answer are such as could be proven under the general denial or should be set up by an affirmative answer we find a great deal of confusion and uncertainty.

Watson in his revision of "Works Practice and Forms," puts it very well. He says in §569, p. 418, that "One of the greatest abuses of the code system is the tendency to plead too much. This is particularly true of pleadings by way of answer. A very great part of the facts pleaded specially can as well be proved under

the general denial, and with much less danger to the pleader. This tendency toward too much special pleading is the result of uncertainty as to the facts that can be proved under the general denial. No fixed rule can be laid down that will remove this uncertainty."

"Defenses in bar to all legal action on contract, or for tort, may be separated into, *first,* those which deny that the plaintiff ever had the cause of action alleged, because either no foundation therefor existed, or if such *foundation* ever existed, it had been in some manner removed before the cause of action arose therefrom; and, *second,* those which admit that a cause of action once existed, but shows that it no longer exists." Pomeroy's Remedies, §642 et seq.

Our statute, §404, Burns Ann. St. 1926, §2-1049, Burns 1933, §153, Baldwin's 1934, provides: "Under a mere denial of any allegation, no evidence shall be introduced which does not tend to negative what the party making the allegation is bound to prove." But this statute does not mean that a defendant under an answer of general denial is confined to mere proof in denial of the facts alleged in the complaint, but may introduce proof of facts independent of and inconsistent with those alleged in the complaint and which tend to meet and defeat the cause of action set up in the complaint. It is where the facts relied upon admits, or do not controvert, the facts in the complaint, but seek to avoid the cause of action by showing that it no longer exists, that such new matter should be set up by an affirmative answer. *Shellenbarger* v. *Blake* (1879), 67 Ind. 75; *Crum et al.* v. *Yundt* (1895), 12 Ind. App. 408, 40 N. E. 79; 1 Works Pr., sec. 579.

The complaint charged that appellant unlawfully cancelled the certificates of stock, and that John F. Grise

sold said certificates of stock at private sale without notice and without first obtaining any order from the Marshall Circuit Court to do so. The amended fourth paragraph of appellant's answer does not confess these facts and avoids them, but denies in an argumentative way that the certificates of stock were wrongfully cancelled by appellant, and that John F. Grise did not make a sale of said certificates at private sale by reason of the contract set up in said answer, and therefore argues that plaintiff's cause of action never did exist. It was therefore not an answer in confession and avoidance, but was a denial that plaintiff's cause of action ever did exist, all of which could have been proven under appellant's first paragraph of answer, which was a general denial. It was therefore a harmless error to sustain the demurrer. *The School Town of Milford* v. *Powner* (1891), 126 Ind. 528, 26 N. E. 484; *The Jefferson Water Supply Company* v. *Riter et al.* (1897), 146 Ind. 521, 45 N. E. 697.

It was not error to sustain appellee's demurrer to appellant's amended fourth paragraph of answer for the further reason that, in our judgment, the facts pleaded in said answer were not sufficient to bar the action.

Sec. 3122, Burns Ann. St. 1926, §6-805, Burns 1933, §3086, Baldwin's 1934, provides:

"Whenever any portion of the estate of any person dying intestate shall consist of stock in a corporation or corporations, and when any person shall die testate owning such stock but making no disposition thereof in his will, the same shall not be sold except under the direction of the proper court; and in the distribution of the estate of the decedent among his heirs or legatees, such stock shall be distributed and transferred to them under the direction of the court."

The contract set out in appellant's amended fourth paragraph of answer, at most, gave George H. Grise

an option to resell said stock to appellant if he so desired upon the terms therein stipulated and agreed to. Appellant in nowise could force or compel George H. Grise, or his heirs, assigns, or legal representatives to resell said stock to it. Full and complete title to said stock passed to the said George H. Grise at the time he purchased the same, and he could at any time thereafter have sold and transferred same to anyone who would have purchased the same, as far as the contract with appellant was concerned, and his grantees would have received a good title thereto. Whether appellant could have successfully refused to repurchase the stock had George H. Grise in his lifetime returned them and demanded a compliance with the contract to repurchase said stock is a question we need not decide. We are only concerned with the question, was the transaction as set out in said fourth paragraph of answer such a sale as came within the provisions of the above quoted sections of our statutes? In the case of *Weyer, Admr.* v. *Second National Bank* (1877), 57 Ind. 198, 206, we find a very excellent discussion of the powers and duties of an administrator or executor, and it was there said:

"His position or office of executor or administrator confers on him no other power or authority over his decedent's estate than the law, under which he holds his office or position, confers. And, if further power or authority over said estate is desired or necessary for any purpose, such executor or administrator can only obtain the same by an order of the court by which he was appointed, in a proper case, to be shown by his verified petition, and other proof if required. So the law is and has been written in this state for more than thirty years past; and so, we think, it ought to be construed in the interest of every citizen and of those who are to come after him. The estates of the dead are a trust to the courts, and every legal safeguard to their proper administration ought to be faithfully sustained."

We also quote Justice Field in the case of *French* v. *Edwards* (1871), 80 U. S. (13 Wall.) 506, 511:

"But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

Appellant says that the transaction was not a sale but the carrying out of a contract that gave to George H. Grise the right to return the stock under the conditions named and that John F. Grise as executor of the estate of George H. Grise succeeded to that right and had the legal right to exercise it if he saw fit to do so. It is true that the sale was made in pursuance to the contract made at the time of the original contract between appellant and George H. Grise, but this fact does not prevent the transaction from amounting to a sale and neither does it confer upon the executor the power or right to disregard the express and mandatory provisions of the statute governing decedent's estates. An executor or administrator does not have absolute power over the personal property of the decedent and cannot do the things his decedent could do, except he do it in the manner and mode prescribed by our statutes. While he can sell the personal property of a decedent in a proper case, yet he is limited and bound by the statutes as to the method and manner of making such sale. Appellant was bound to know that the executor of George H. Grise's estate could not make a valid and legal sale and transfer of said stock at private sale until he had first been authorized so to do, by an order of the proper court, for such was and is the law of this state, which its citizens,

individually or corporate, are conclusively presumed to know.

So it became the duty of appellant when the executor of the estate of George H. Grise presented the certificates of stock to it for cancellation and demanded that appellant accept the same and pay him the price agreed to, that it require said executor to show proper authority to make a legal sale and be able to transfer good title, or to make such inquiry for itself. Certainly such requirement could work no hardship upon appellant or any other prospective purchaser. Neither would it be a hardship upon the executor to secure an order for the sale of said stock. The statute here in question was enacted for the protection of the estate, its creditors, and for the benefit and protection of the heirs of the estate. It is not sufficient to say that if a sale was made contrary to the statute and the estate suffered loss thereby that the executor and his bondsman would be liable for such loss. The transaction as set out in appellant's amended fourth paragraph of answer, in our judgment, was a sale of corporate stock within the meaning of §3122, Burns Ann. St. 1926 (§6-805, Burns 1933, §3086, Baldwin's 1934), and that said statute is mandatory. The executor having made the sale to appellant as set out in said answer without first securing an order of court so to do was invalid and of no binding force. *Weyer* v. *Admr.* v. *The Second National Bank, supra.*

Judgment affirmed.