## BICKEL *v.* BIBLER ET AL.

[No. 16,370.   Filed March 3, 1941.]

*Morton S. Hawkins,* of Portland, for appellant.

*E. E. Chenoweth* and *C. E. Schwartz,* both of Portland; *James Emshwiller,* of Hartford City; and *Fred W. Eley,* of Indianapolis, for appellees.

BLESSING, J.—This action was instituted by Waldo Bickel, the appellant, in the Jay Circuit Court against numerous defendants for partnership accounting of all of the affairs of the Farmers Bank of Salamonia, a private bank, the determination of claims of the numerous partners, for appointment of a receiver, the dissolution of the partnership, to establish appellant's interest in the assets of said bank, and for a judgment against the defendants in the sum of two thousand dollars ($2,000) because of negligence and the mismanagement of said institution.

A change of venue was taken from the Jay Circuit Court to the Blackford Circuit Court, where upon submission of the cause for trial by the court, the court

found the facts specially and stated nine conclusions of law thereupon in favor of the defendants.

A motion to dismiss this appeal was filed by the appellee herein, but, upon consideration of the briefs submitted by both sides upon said motion, this court is of the opinion that such irregularities as appear in the record were in no wise chargeable to the appellant but were due to the mistakes of the clerk of the Blackford Circuit Court. The appellant has made an honest effort to correct such mistakes and the motion to dismiss this appeal is hereby overruled.

The court found the facts specially in this cause but we do not think it material to this decision that all of the facts be set out.

It appears that the Bank of Salamonia was organized in the year of 1917 pursuant to Acts 1907, ch. 113, p. 174. Said bank had an authorized capital of fourteen thousand dollars ($14,000) divided into one hundred and forty shares, and the partners subscribed the full amount of the capital stock. Among the original subscribing partners was one Leroy Bickel who contributed the sum of five hundred dollars ($500) to said capital stock and was issued five certificates for one hundred dollars ($100) each. Leroy Bickel died in 1926 leaving among the assets of his estate said five shares of stock in said private bank. Leroy Bickel left as his sole and only heirs at law his wife, one son, and a grandchild, who under the laws of descent of our state were each entitled to a one-third interest of said decedent's estate. No letters of administration were issued on the estate of the said Leroy Bickel but it is found that his debts were all paid and that the bank stock, heretofore referred to, remained as a part of the surplus assets of said estate. Subsequent to the death of said

decedent the bank stock was held in the custody of his widow, who in 1928 contributed twenty-seven dollars ($27) a share or a total of one hundred thirty-five dollars ($135) along with contributions of other then stockholders according to the number of shares held by each contributor to save the bank's capital from impairment. The impairment of said capital was due to a certain check kiting enterprise by one Joseph Andrews, but the loss by reason of his conduct was not chargeable to any negligence or willful mismanagement on the part of George W. Hartnick, cashier who had charge of said bank.

During the time that said Lucinda Bickel, the widow of Leroy Bickel, held such bank stock in custody no transfer of said stock was made upon the books of said bank. Said Lucinda Bickel died testate in the year of 1932, and by the terms of her will all of her estate was bequeathed and devised to the appellant and said grandson. In the administration of her estate, no disposition was made of said stock, but at the time said estate was being closed, her administrator, with the will annexed, offered said bank stock to the appellant and said grandson and further offered to assign the same. Both the appellant and the grandson refused to accept said stock saying they did not want the same but wanted the money thereon; whereupon said administrator, without executing any assignment or transfer thereof, left the certificates of stock on a table and never saw them any more until this case was tried in the lower court. The final report of said administrator was duly filed and approved by the court and he was released and discharged as said administrator.

It further appears that the appellant upon the settlement of his mother's estate took said certificates into his custody and possession and continued to hold

the same, but at no time caused said certificates to be transferred to him by anyone, except the grandson did transfer his interest in the partnership to the appellant prior to the suit below; but appellant never caused the shares of stock to be transferred upon the books of the partnership bank.

In 1933, the Farmers Bank of Salamonia went into voluntary liquidation following a petition of the holders of eighty per cent (80%) or more of its stock and thereupon suspended its banking business. Following the petition for voluntary liquidation, a trustee was appointed. After the reduction of the assets of said bank to cash, there remained a substantial deficiency of funds in his hands with which to pay the debts of the bank. Certain of the partners and shareholders, including all the defendants, on or about October 1, 1937, contributed among themselves to a fund with which to purchase from the creditors and depositors of said bank all claims against the bank which were in excess of fifty dollars ($50) in amount and with which to make voluntary payment and contribute to the trustee a sum sufficient to pay off in full all creditors and debtors whose claims as to each did not exceed fifty dollars ($50). Said fund was used for said purpose and thereby all the debts and deposit liabilities were paid and satisfied in full. The contributing partners and shareholders paid the sum of three hundred dollars ($300) per share into said fund, the total being in excess of twenty thousand dollars ($20,000). To this fund the appellant, grandson, the estate of Leroy Bickel, the estate of Lucinda Bickel, and the appellant as assignee of said grandson made no contribution nor did the said appellant as an individual or assignee ever make any contribution to the fund raised by certain former partners and shareholders of said bank to make

up the deficiency of said bank to pay its debts and other creditors.

On the eighteenth day of October, 1937, the liquidating trustee filed in the Jay Circuit Court in the proceeding in which he was appointed as trustee to liquidate said bank, his final report. Said final report was approved by the court and he was released and discharged. During his administration there came into his possession, in addition to the contributions made, certain assets, a part of which at least were sold by an order of the court in the sum of eighteen hundred dollars ($1,800), being the appraised value thereof, to one Hilfiker, one of the defendants in this cause of action.

These facts, while not all of the detailed facts found by the court in its special finding, are more than sufficient as a basis for our decision in this cause.

Upon the special finding of facts, the court stated nine conclusions of law all in favor of the defendants.

We deem it unnecessary to set out the conclusions of law or to deal with them singly, because the decision of the court is based upon the single proposition as to whether the appellant, upon the facts found, was entitled to maintain this action for an accounting and the appointment of a receiver.

It is the contention of the appellant in this case that by reason of the death of his father, the death of his mother, and the assignment of Willard Bickel of his interest in the partnership as an heir of Leroy Bickel and as legatee of his grandmother's will, that appellant became the sole owner of the interest in the Farmers Bank of Salamonia represented by the five shares of stock originally issued to his father, Leroy Bickel, and that by reason thereof he is entitled to an accounting

from the surviving partners and to the appointment of a receiver for the property of said partnership capital.

It appears that no administration was taken out upon the estate of Leroy Bickel, but his debts were all paid. The five shares of stock in the Farmers Bank of Salamonia remained as a part of the surplus assets of said estate. Ordinarily where it is shown that the debts of the estate have been paid the title to personal property of an intestate decedent vests in his heirs at law. *Craig* v. *Norwood* (1916), 61 Ind. App. 104, 108 N. E. 395.

Where an executor or an administrator is appointed for a decedent's estate, the title to personal property vests in the executor or administrator of the said estate. *State ex rel. Dept. of Financial Institutions* v. *Kaufman* (1941), 218 Ind. 74, 30 N. E. (2d) 978.

Where the title to personal property passes to an administrator or executor, such as is not used for the payment of debts remains for distribution, and if the same consists of corporate stocks a distribution must be made upon order of the court having jurisdiction of the estate. If the property is of a character that cannot be distributed, the same may be sold and the proceeds divided among the heirs according to the distributive shares.

The appellant was entitled to, if he were willing to accept the same, as an inheritance from his father, one-third of the five shares of bank stock. Leroy Bickel's widow was entitled to one-third of said stock and Willard Bickel, if he were willing to accept the same, inherited the remaining one-third of said stock. Ordinarily, where an inheritance is beneficial, acceptance may be presumed; but no such presumption arises where the inheritance constitutes a lia-

bility or by its character may entail an obligation which the heir is unwilling to assume. The Farmers Bank of Salamonia was a private bank. The owners and shareholders therein were jointly and severally liable for all the bank's indebtedness.

An acceptance by an heir or legatee of bank stock such as was involved in this case implies an assent of the heir to be bound by the law governing the liability of stockholders in a private bank. By reason of the liability of the owner of such bank stock, it naturally follows that such liability cannot be forced upon an heir by the operation of a statute of descent and distribution, nor upon a legatee to whom bank stock carrying a liability is bequeathed. *Austin* v. *Strong* (1928), 117 Tex. 263, 1 S. W. (2d) 872, 3 S. W. (2d) 425, 79 A. L. R. 1528.

It was said in the case of *Austin* v. *Strong, supra:*

"If, in the absence of any showing that appellee agreed, either expressly or impliedly, to assume the liability fixed against stockholders in State banks, she can be made personally liable and her separate property taken to satisfy such liability, then the law on this subject is truly in a deplorable state. Under such construction of the statute any person who, as the result of years of toil and effort, has acquired a competence for himself and family, may awake at any time to find the accumulations of a life-time swept away because of the death of a remote ancestor, of whom he unfortunately happened to be the sole heir, if such ancestor owned a large amount of worthless stock in an insolvent bank. A citizen could be thus pauperized by having his individual property taken without any action whatever upon his part. It would give rise to a danger from which a prospective heir would be helpless to shield himself. He could not keep his ancestor from investing in bank stock nor could he take any action which would prevent the inheritance statute from vesting in him the title to such stock."

The statute of descent could only operate to vest such right and title to the bank stock of Leroy Bickel, deceased, as would enable his heirs to become stockholders in the bank, if they, or any one of them, desired to do so. *Austin* v. *Strong, supra.* And this is true as to a bequest under a will.

Under the law governing private banks in this state, any or all of the heirs of said Leroy Bickel could have had their respective share in the decedent's estate, as respects said shares of stock, transferred upon the books of said bank and thereby have become partners in said banking institution, or either or all of said heirs might have become partners in said bank by doing some affirmative act showing the acceptance of the inheritance, such as accepting dividends or in making a contribution to the repair of capital as was done in this case by the widow of Leroy Bickel.

However, Waldo Bickel and the grandson not only failed to affirm the inheritance of said bank stock by any act, but never came into custody or possession of any of the shares until after the death of said Lucinda Bickel. When the administrator, with the will annexed, of the estate of Lucinda Bickel, deceased, presented said shares of stock to the appellant and the grandson, Willard Bickel, and offered to assign and transfer said shares, both the appellant and the grandson refused to accept the same but demanded the money thereon. The administrator left said shares on the table without any assignment or transfer and it was subsequent to this that the appellant took the assignment of interest in the bank partnership from the grandson.

As already stated these shares of stock were personal property and under the facts constituted a part

of the surplus in the estate of Leroy Bickel and were a part or all of the surplus assets in the estate of Lucinda Bickel. They represented whatever interest in value Leroy Bickel had in the banking partnership. This being the case and neither the appellant nor the grandson desiring to become partners in the Farmers Bank of Salamonia, the shares could have been sold and the proceeds divided. If the heirs of Leroy Bickel could not have personally disposed of said stock without becoming liable as partners, an administrator could have been appointed for the estate of Leroy Bickel and the bank stock sold and the proceeds divided. If the appellant and Willard Bickel desired the money upon such interest as the widow had in these shares and the administrator failed and neglected to sell the same and divide the proceeds, an administrator *de bonis non* could have been appointed to sell said shares.

The law under which the Farmers Bank of Salamonia was organized requires the issuance of certificates of stock. Our Supreme Court, in the case of *Hall* v. *Essner* (1935), 208 Ind. 99, 193 N. E. 86, held that a private bank owned by individuals, partners, or unincorporated persons and organized under the Act of 1907, *supra,* corresponds closely to the type of business organization known as a joint stock company, and due to the transferability of interest provided for in the Acts of 1907, the winding up of the partnership business at the pleasure of a partner or by reason of death of a partner is avoided.

It would appear, therefore, that if the heirs of Leroy Bickel or the legatees of Lucinda Bickel did not desire to accept the shares of stock in the Farmers Bank of Salamonia with the attendant liabilities the stock should have been sold and the proceeds divided.

The appellant could not separate the certificates of stock from the interest they represented in the partnership. If he accepted the stock, he became a partner in said banking enterprise. If he refused the stock he waived his interest in said enterprise as heir, legatee, and assignee except the right to the proceeds upon the sale of such stock.

It further appears that statutory provision is made for the voluntary dissolution of private banks in this state. The method to be followed is specifically prescribed. Section 18-2713, Burns' 1933.

Owners of at least eighty per cent (80%) of the capital of the Farmers Bank of Salamonia followed this prescribed method of dissolving said bank. If the appellant had any rights as a creditor of said banking partnership, he could have filed his claim with the trustee and had the same adjudicated in the dissolution proceedings.

The judgment of the lower court is hereby affirmed.

NOTE.—Reported in 32 N. E. (2d) 127.