IN RE THE ESTATE OF HENRY A. ROOT, DECEASED.
ROOT ET AL. *v.* BLACKWOOD, EXECUTRIX, ET AL.

[No. 18,005. Filed October 17, 1950.]

546

Crumpacker, J., not participating.

*T. C. Mullen* and *James P. Gleason,* both of Michigan City, for appellants.

*Robert E. Glasscott,* of Michigan City; and *McInerny & Huguenard,* of South Bend, for appellees.

MARTIN, J.—This appeal is from a judgment approving the report of Executor Arnt and a report of Trustee Baker excepting as to Exhibit "A" filed therewith.

The errors relied upon for reversal are errors of the trial court in each of its conclusions of law numbered 13 through 28, inclusive, and in the court's overruling of each of the motions for a new trial. The two grounds of each motion assert (1) that the decision of the court is not sustained by sufficient evidence and (2) the decision of the court is contrary to law.

Without reciting all of the detailed findings of facts by the court the germane facts for the purpose of this opinion are as follows:

The decedent, Henry A. Root, during his lifetime, operated a sash and door factory in Michigan City, Indiana, known as the Root Manufacturing Company. Of the 300 shares of capital stock, 290 shares were owned by Root. He died testate September 15, 1925. His Will bequeathed the corporate stock to his minor children, ranging in ages from 10 to 17 years, three of whom are the appellants.

Letters testamentary were issued to the executors named in his will on October 27, 1925, one of whom was J. Eugene McKelvey of Hollidaysberg, Pennsylvania, Root's brother-in-law who was and has been at all times a non-resident of the State of Indiana. The

resident Executor was Charles E. Arnt of Michigan City, Indiana, and upon his death his Executrix was substituted in this proceeding.

Root's will also appointed Arnt and McKelvey guardians of his minor children. Arnt declined to act as guardian, but letters of guardianship were duly issued by the LaPorte Superior Court to McKelvey on November 30, 1925.

The following are the court's findings in part:

"15th. After the death of said decedent, Henry A. Root, and after letters testamentary on his said estate had been issued to said Arnt and McKelvey, at a meeting of the stockholders of said Root Manufacturing Company, held in the fall of 1925, J. Eugene McKelvey, Charles E. Arnt and Albert S. Nichols were elected directors of said Root Manufacturing Company and continued to act as such directors to and including the 25th day of January, 1930.

"16th. That following the death of said decedent and following the election of said J. Eugene McKelvey, Charles E. Arnt and Albert S. Nichols as directors of said Root Manufacturing Company the said Root Manufacturing Company did employ one ——— Staver, a non-resident of the State of Indiana, as manager of said Root Manufacturing Company; that said Staver did move to and establish a residence in the City of Michigan City, Indiana, and did remain and act as manager of said Root Manufacturing Company from the fall of 1925 to about the fall of 1929. That during said period the said Staver managed and directed the business of said corporation and conducted the prudential affairs of said corporation with the approval of said McKelvey, Arnt and Nichols.

"18th. That on the 24th day of June, 1926, said executors filed their petition to determine the value of the property of said decedent for inheritance tax purposes, and on said date said executors did also file an inventory and appraisement of real estate owned by decedent personally at the time of his death in the sum of seventy-five hundred Dollars

($7,500.00). That said petition to determine the value of said property did declare said two hundred ninety (290) shares of stock in said Root Manufacturing Company to be of the value of twenty-nine thousand dollars ($29,000.00).

"20th. That the net value of the estate of said Henry A. Root, deceased, was adjudicated and fixed by this court for inheritance tax purposes in the said sum of Thirty Thousand Eight Hundred Ninety-Two Dollars and Twenty Cents ($30,-892.20), that the gross estate was fixed and adjudicated in the sum of Thirty-Six Thousand Nine Hundred Fifty Dollars ($36,950.00), that deductions were claimed and allowed in the sum of Six Thousand Fifty-seven Dollars and Eighty Cents ($6,057.80). That the deductions claimed and allowed were as follows:

| | |
|---|---:|
| Administration of estate | $ 600.00 |
| Expense of family for year of administration | 3,000.00 |
| Taxes, November, 1925 | 58.50 |
| Taxes, May, 1926 | 87.80 |
| Taxes, November, 1926 | 87.50 |
| Expenses, last sickness, nurse | 892.00 |
| Expenses, last sickness, Clinic | 308.00 |
| Expenses, last sickness, Dr. Rawson | 200.00 |
| Funeral, Earl Undertaker | 529.00 |
| Kintzele, Flowers | 50.00 |
| Tombstone | 245.00 |
| Total | $6,057.80 |

That no other deductions or indebtedness of said decedent or decedent's said estate were claimed by said executors; that in the October Term, 1926, of this court, said Charles E. Arnt and J. Eugene McKelvey as executors of the last will and testament of said decedent filed their final report in said estate, which said report was executed by them on the 4th day of November, 1926.

That in said final report said executors did affirm that the value of said estate, as fixed by the adjudication of the value of said estate for inheritance tax purposes, was the fair market

value of said estate and of each item thereof. That among the items there were the following:

Certificate No. 1, Root Manufacturing Company, 150 shares_____$15,000.00

Certificate No. 6, Root Manufacturing Company, 140 shares_____$14,000.00

"21st. That said executors did not sell and never attempted to sell the stock of the Root Manufacturing Company owned by the decedent, Henry A. Root, at the time of his death.

"26th. That said Root Manufacturing Company was continuously operated as a going concern from the time of the death of the said Henry A. Root, deceased, up to and including the 10th day of February, 1930.

"32nd. That at the time of the death of said decedent, Henry A. Root, the said Root was a widower, his wife having died sometime prior thereto; that the said Henry A. Root, at the time of his death and for sometime prior thereto, had maintained a home for himself and his minor children in the City of Michigan City, Indiana, upon the property described in the inventory and appraisement of the real estate filed in said estate, and during all of which time said decedent, Henry A. Root, employed a housekeeper for the purpose of supervising and maintaining the home for himself and his said minor children. That at the time of the death of said decedent, Henry A. Root, the only property belonging to him, or in which he had any title or interest, either real, or personal, was the real estate described in the inventory and appraisement of the real estate filed in this estate, and the personal property mentioned in the inventory and appraisement of the personal property filed in this estate, which consisted of 290 shares of stock in said Root Manufacturing Company, one diamond ring with one stone, one diamond ring with two stones, one ruby and diamond ring, the furniture in the home maintained by decedent at the time of his death, and four shares of stock in the Michigan City Hotel Company, of Michigan City, Indiana.

· . "48th. That on the 10th day of February, 1930, the said Charles E. Arnt and J. Eugene McKelvey filed a petition in this court asking the court for the appointment of a trustee for the purpose of liquidating the said Root Manufacturing Company, and on said date this court did appoint the said George E. Baker as such trustee, who qualified, gave bond and immediately took upon himself the duties of such trust for the purposes mentioned in the petition and order praying for such appointment and the appointment of the said George E. Baker as such liquidating agent. That on and after said date all of the affairs, property and assets of the said Root Manufacturing Company have been in the exclusive control of the said George E. Baker as such trustee."

The executors never attempted to distribute said stock, nor was it ever distributed under order or direction of court.

The executor filed a report on January 10, 1944 and the Trustee also filed a report on January 10, 1944.

By objections and exceptions to the report of executor Arnt, the appellants sought to require executor Arnt to charge himself with the assets of the estate including the value of said corporate stock as of the time and date when letters testamentary were issued, and to require said executor to account for the doings of said corporation while the same was under the direction and control of said executors.

By objections and exceptions to the said report of Trustee Baker, the appellants sought to require Trustee Baker to charge himself with the value of the assets of said corporation as of the date of his appointment as such trustee, and to account for income received by said Trustee in the conduct of said trust.

The facts were found specially by the court without the intervention of the jury, and the court's conclusions of law stated thereon.

The trial court's conclusions of law relieve executor Arnt from responsibility for the corporate stock on the theory that the title to corporate stock after the death of its owner is analogous to the title to real estate; that title vest in the legatees subject to be sold by the personal representative to pay debts, and that until title is so divested the personal representative assumes no responsibility for the corporate stock. Responsibility for the stock, according to the trial court's conclusions of law therefore rest upon the guardian of the minor legatees.

We cannot agree with this conclusion of law pertaining to the corporate stock vesting in the minor legatees. We hold that the title to said stock vested in the executor upon his appointment by the court, and the lower court's conclusion was reversible error.

Corporate stock is just a particular type of personal property. *Citizens' Street Railway Company, et al.* v. *Robbins, Administrator* (1891), 128 Ind. 449, 26 N. E. 116.

Where an executor or an administrator is appointed for a decedent's estate, the title to personal property vests in the executor or administrator of said estate. *Bickel* v. *Bibler* (1941), 109 Ind. App. 7, 32 N. E. 2d 127; *State ex rel. Department of Financial Institutions* v. *Kaufman* (1941), 218 Ind. 74, 30 N. E. 2d 978; 1 *Henry's Probate Law and Practice* (5th Ed.), § 176, p. 179.

Our Supreme Court made this especially clear in *State ex rel. Dept. of Financial Institutions* v. *Kaufman, supra,* when it said:

> "It may be observed that, generally, upon the death of an intestate, title to his personalty vests in the legal representative of his estate, where it remains until the property is sold and the pro-

ceeds applied to the payment of the debts of the decedent and the expense of administration, or distributed to the heirs. 24 C. J., § 710, p. 201. This is in contradistinction to the rule with respect to real estate, title to which vests in the· heirs immediately upon the death of the owner, subject only to being divested to provide funds with which to discharge the debts of the decedent and the costs of administering the estate. *Reed, Admr.* v. *Brown* (1939), 215 Ind. 417, 19 N. E. 2d 1015. Ordinarily, the representative of an estate is charged with the responsibility of converting the personal property of the decedent into cash and making proper distribution thereof (§ 6-801 and § 6-1411, Burns' 1933, § 3083 and § 3201, Baldwin's 1934), though corporation stock is not usually sold, but is distributed and transferred in kind, under direction of the court. (§ 6-805, Burns' 1933, § 3086, Baldwin's 1934.) Such personal representative is regarded as an officer of the court and must look to the court or the law for his authority in dealing with the assets of the trust. In *Interstate Public Service Co.* v. *Weiss, Admr.* (1935), 208 Ind. 122, 130, 193 N. E. 226, 229, it was said:

'An executor or administrator does not have absolute power over the personal property of the decedent and cannot do the things his decedent could do, except he do it in the manner and mode prescribed by our statutes. While he can sell the personal property of a decedent in a proper case, yet he is limited and bound by the statutes as to the method and manner of making such sale. Appellant was bound to know that the executor of George H. Grise's estate could not make a valid and legal sale and transfer of said stock at private sale until he had first been authorized so to do, by an order, of the proper court, for such was and is the law of this state, which its citizens, individually or corporate, are conclusively presumed to know.' "

In the case of *Bickel* v. *Bibler, supra,* this court said:

"Where the title to personal property passes to an administrator or executor, such as is not used

for the payment of debts remains for distribution, and if the same consists of corporate stocks a distribution must be made upon order of the court having jurisdiction of the estate. If the property is of a character that cannot be distributed, the same may be sold and the proceeds divided among the heirs acccording to the distributive shares."

It is not within the general scope of his powers or authority for an administrator or executor to carry on the business of his decedent, and if he does so without the order of some proper court, or the authority of a will, he does so at his own risk and will be personally liable for all losses sustained, while he will be required to account to the estate for all profits he may make. 1 *Henry's Probate Law and Practice* (5th Ed.), § 180, p. 188; *Burwell* v. *Cawood* (1844), 2 How. (43 U. S.) 559, 11 L. Ed. 378; *Smith* v. *Ayer* (1880), 101 U. S. 320, 25 L. Ed. 955; *Hart* v. *Anger* (1886), 38 La. Ann. 341; *Brasfield* v. *French* (1882), 59 Miss. 632; *Lucht* v. *Behrens* (1876), 28 Ohio St. 231, 22 Am. Rep. 378; *Schouler on Wills, Exrs. & Admrs.* (6th Ed.), § 2328.

In the case of *Weyer, Admr.* v. *Second National Bank of Franklin et al.* (1877), 57 Ind. 198, 206, the court said:

"His position or office of executor or administrator confers on him no other power or authority over his decedent's estate than the law, under which he holds his office or position, confers. And, if further power or authority over said estate is desired or necessary for any purpose, such executor or administrator can only obtain the same by an order of the court by which he was appointed, in a proper case, to be shown by his verified petition, and other proof if required. So the law is and has been written in this State for more than thirty years past; and so, we think, it ought to be construed in the interest of every citizen and of

those who are to come after him. The estates of the dead are a trust to the courts, and every legal safeguard to their proper administration ought to be faithfully sustained."

The executor cannot escape liability by now claiming that the responsibility for administering the estate of decedent and managing the Root Manufacturing Company was upon the guardian. The executor as an officer of the court could not and cannot evade responsibility or liability by dealing with the assets of the trust without authority of the court and without authority of law. The executor was bound to know that he had no right to turn the administration of the estate over to the guardian or to the Root Manufacturing Company without order of court and without complying with the law. No statute or court order authorized any such delegation of authority and responsibility.

When executor Arnt assumed control of the corporate stock of the Root Manufacturing Company, he could have either sold said stock for its value at that time, or distributed it under order of the court.

He chose instead, without any authority from either the court or will, to continue operation of the business through others, for a period of over four years and until said stock is now probably of no value.

"The personal representative is liable for the actual loss to the estate resulting from negligent failure to sell securities." 33 C. J. S. 1259.

For the reason heretofore stated, this case must be reversed and we are of the opinion justice requires there should be a new trial of the issues presented by the reports of the executor and the trustee and the

556

exceptions thereto and we do not deem it necessary to pass on other questions raised by appellant.

Judgment reversed.

Court ordered to sustain each of said motions for a new trial.

Crumpacker, J., not participating.

NOTE.—Reported in 94 N. E. 2d 489.