Filed June 12, 1891.

---

No. 13,872.

## Citizens' Street Railway Company et al. *v.* Robbins, Administrator.

| | |
|---|---|
| 128 | 449 |
| 142 | 488 |
| 143 | 704 |
| 128 | 449 |
| 144 | 672 |
| 128 | 449 |
| 154 | 409 |

DECEDENTS' ESTATES.—*Corporate Stock.—Personal Property.*—Shares of stock in a corporation, owned by the decedent at the time of his death, are personal property.

SAME.—*Sale.*—Such stock descends to the heirs at law, subject to the right of the administrator to subject the same to sale in the manner prescribed by the laws of the State.

SAME.—*Public and Private Sales.*—The common law right of the administrator to sell and dispose of personal property does not exist in this State. Sales of such property must be made in the manner prescribed by our statutes upon the subject. In the absence of an order from the proper court, the sale must be public, and where the sale is private, under the order of the court, it must be made in substantial compliance with the order.

SAME.—*Sales Under Order of Court.— When Title Passes.*—In cases of private sales, where the order of the court does not require a confirmation, if

the sale is made in substantial compliance with the order of the court, the title passes to the purchaser upon his compliance with the terms of the sale.

SAME.— *Validity.*—Where an order to sell stock at private sale required the administratrix to make the sale on good security, and the sale was made upon the individual note of the purchaser without any security and on a credit of ten years, the statute authorizing a credit of only twelve months, the sale was void and vested no title.

SAME.—*Corporate Stock.—Transfer of on Books of Corporation.—Liability for Illegal Transfer.*—In such case, if the corporation, with notice that the stock belonged to the estate of the decedent, and with notice of the order of sale, cancels the certificates of stock, and issues a new certificate to the purchaser, without inquiring into the validity of the sale, it is liable to the estate for any loss occasioned thereby. It is bound to know that the sale has been made in compliance with the terms of the order.

SAME.—*Liability of Corporation to Estate.*—A purchaser of such new certificate, in good faith, and without notice of any illegality in the surrender and cancellation of the original stock, is not liable to the estate, its remedy being against the corporation.

PLEADING.—*Exhibits.—Admissibility in Evidence.*—Where a certain sworn statement is set out in the complaint, the plaintiff can not object to its introduction in evidence by the defendant.

From the Marion Superior Court.

*F. Winter, J. B. Elam, H. C. Allen* and *U. J. Hammond,* for appellants.

*R. Hill, R. N. Lamb, S. M. Shepard, H. Gale, J. E. McDonald, J. M. Butler, A. H. Snow* and *A. L. Mason,* for appellee.

COFFEY, J.—The amended complaint in this cause consists of two paragraphs. The first alleges, substantially, among other things, that Henry H. Catherwood, deceased, at the time of his death was the owner of three hundred and eight shares, of the par value of one hundred dollars each, of the capital stock of the Citizens' Street Railway Company; that he died intestate on the 31st day of August, 1872, leaving as his only surviving heirs at law Lucy D. Catherwood, his widow, since married to one Phelps, and two infant children, namely: Ellen B. and John C. Catherwood;

that said Lucy D. Catherwood was duly appointed and qualified as the administratrix of the estate of the said Henry H. Catherwood, deceased, and on the 12th day of July, 1873, upon petition to the circuit court of Marion county, procured the following order from said court, namely :

" Comes now Lucy D. Catherwood, administratrix of Henry H. Catherwood's estate, and files her petition praying that she be allowed to dispose of 308 shares of the stock of the Citizens' Street Railway Company of Indianapolis, of the par value of $100 per share; and which has been appraised at the value of 15 cents on the dollar, and to sell the same at private sale for the appraised value thereof; and now the court having heard said petition, and being fully advised in the premises, and satisfied that the interests of said estate will be best served by selling the same at private sale, the said administratrix is, therefore, ordered and empowered to sell the said stock at private sale for the appraised value thereof, taking good and sufficient security for the payment of the purchase-money ; and said administratrix is further ordered to make a return of her proceedings within 90 days from this date."

That the administratrix made no sale of said stock whatever pursuant to the terms of said order, and made no sale of said stock in compliance with the terms of the statutes of the State of Indiana regulating the sale of personal property of a decedent's estate at private sale, nor did she make any sale of said stock at public sale ; that she, without any authority so to do, assigned and delivered to one John Carlisle said certificates of stock without receiving any pay therefor and without taking any security of any sort for the purchase-money therefor, taking merely as evidence of said attempted sale, and of the supposed indebtedness therefor, the promissory note of Carlisle for $6,160 due ten years from date, no part of which note has ever been paid ; that no return of said attempted sale to Carlisle, nor of any sale of said stock, nor of the proceedings of the administratrix in

reference thereto, was ever made to the court, and no entry in relation thereto was ever made; that after the attempted sale to Carlisle, the administratrix made out, under oath, a return of said sale to the effect that she had sold said stock to John Carlisle for the sum of $6,160 for cash, but the same was never filed or approved by the court; that long after the attempted transfer of said stock to Carlisle, the street railway company, upon his request, wrongfully issued certificates for said stock to him, and that he, about the year 1875, sold and assigned the same to appellant Tom L. Johnson, who bought the same with knowledge that they were issued in lieu of the certificates formerly held by Henry H. Catherwood, deceased, and that said stock had belonged to his estate, and with knowledge of the order for the sale of the same above set out, and with knowledge that no return of said sale had been made and confirmed by the court; that at the time he so purchased said stock he was a stockholder and director in said street railway company; that said street railway company has declared dividends in a large sum, which have been paid to the said Carlisle and the said Tom L. Johnson, and that before the commencement of this suit the appellee demanded said stock of the appellants, and each of them, which they each refused to surrender.

The second paragraph of the amended complaint does not differ materially from the first, except in that it alleges that on the 16th day of July, 1873, the Citizens' Street Railway Company, upon the request of Carlisle, having knowledge of the fact that said stock belonged to the estate of Henry H. Catherwood, and having knowledge of the pending administration of said estate, and of the order of sale of said stock, and the terms thereof, and having knowledge of the fact that no return of any sale under said order had as yet been made to the court, wrongfully issued certificates of stock to Carlisle, who sold and assigned the same to Johnson.

To this complaint the appellant the Citizens' Street Railway Company filed an answer consisting of three paragraphs.

The third paragraph avers, substantially, that, on the 16th day of July, 1873, Lucy D. Catherwood, as the administratrix of the estate of Henry H. Catherwood, obtained the order set out in the complaint, authorizing her to sell the 308 shares of the capital stock of the Citizens' Street Railway Company named in the complaint; that said stock was represented by certificates numbered 96, 97, 98, 99, 100 and 101 for fifty shares each issued to H. H. Catherwood, November 18th, 1867, certificates numbered 33, 35 and 36 for one share each, issued to E. B. Martindale, February 13th, 1865, and endorsed in blank by Martindale, and certificate numbered 37, for five shares, issued to R. B. Catherwood, February 13th, 1865, which was endorsed in blank by said Catherwood; that said Lucy D. Catherwood, as authorized and empowered as such administratrix to sell said stock at private sale, made the following endorsement upon each of said certificates numbered 96, 97, 98, 99, 100 and 101:

" I hereby transfer all my interest in the within stock to John Carlisle. July 16th, 1873.

" Lucy D. Catherwood."

" For value received I assign and transfer to John Carlisle three hundred shares of the capital stock of the Citizens' Street Railway Company, this July 16th, 1873.

" Lucy Catherwood,

"Adm'x of H. H. Catherwood."

And upon certificates numbered 33, 35 and 36 she made the following endorsement:

"I hereby transfer all my interest in the within stock to John Carlisle, July 16th, 1873.

" Lucy D. Catherwood."

" For value received I assign and transfer to John Carlisle three shares of the capital stock of the Citizens' Street Railway Company, this 16th day of July, 1873.

" E. B. Martindale,

" By Lucy D. Catherwood, Att'y in fact."

And a similar endorsement on certificate numbered 37, and

delivered the said certificates to John Carlisle, to be brought by him to the office of said company, and to have the same transferred to him as the owner thereof on the books of said company; that said Carlisle brought said stock to the office of the company, and requested that the same be transferred to him by cancelling the said certificates, and issuing new certificates to him in lieu thereof; that the company caused the records of the Marion Circuit Court to be examined, and ascertained that said administratrix had full power to dispose of said stock at private sale as set forth in the complaint, and, relying upon the order of the court and the endorsements made by said administratrix, and on the fact that said certificates, so endorsed, were in the possession of said Carlisle, and believing him to be the owner and purchaser of said stock, made such transfer of said stock to him, and cancelled said certificates, and issued to him in lieu thereof a new certificate numbered 135 for three hundred and eight shares of stock.

The appellant Johnson filed an answer consisting of four paragraphs.

The third paragraph avers, substantially, that the stock in controversy was represented by certificate numbered one hundred and thirty-five, issued by the Citizens' Street Railway Company to John Carlisle, on the 17th day of July, 1873, and in whose name the stock was then standing on the books of said company; that said stock was endorsed by said Carlisle, and had been pledged to the First National Bank of Indianapolis by him, or by some one in his behalf, and was so held by said bank at the time appellant purchased the same; that at the time of said purchase he had no knowledge where said stock came from, or who its previous owner had been; that at the time of the transaction between Carlisle and the Citizens' Street Railway Company and Lucy D. Catherwood he was a citizen of the State of Kentucky, and had no connection with or interest in said company, and had no knowledge or information of its affairs, and pur-

chased and paid for said stock without any notice or knowledge whatever of the claim of any other person thereto, believing it to be, as it purported to be, a genuine certificate of the ownership of three hundred and eight shares of the capital stock of said company ; that he denies that he had any knowledge that said certificate had been issued in lieu of certificates formerly owned or held by Henry H. Catherwood, or that it had been owned by his estate, or that any order had been made for the sale of any stock belonging to said estate.

The fourth paragraph avers, substantially, the same facts averred in the third answer of the Citizens' Street Railway Company, above set out, and in addition thereto that the administratrix permitted the stock to be and remain in the name of John Carlisle, and authorized him to treat said stock as his own property, and held him out to the public as the owner thereof; that said Carlisle, or some one in his behalf, pledged said stock to the First National Bank of Indianapolis, as the owner thereof, to secure his individual indebtedness to said bank ; that the said administratrix made no objection thereto, but, on the contrary, made return to the Marion Circuit Court, on oath, that she had sold said stock to Carlisle for cash, and filed the same in the records of said court where the settlement of said estate was pending; that he afterwards purchased said stock of said bank, and at the time he purchased the same he was induced to believe, and did believe, from the conduct of said administratrix, that said bank held said certificate from Carlisle as the owner thereof, and that he had no knowledge or information as to any claim thereto by the estate of Henry H. Catherwood; that at the time he purchased the same he had no knowledge or information that the same had been issued in lieu of stock formerly held by Henry H. Catherwood or his estate, and no knowledge or information of the legal proceedings set up in the complaint.

To each of these answers the court overruled a demurrer.

Upon issues formed the cause was tried by the court, at special term, resulting in a finding and judgment in favor of the appellants. Upon appeal to the general term the judgment was reversed, from which latter ruling this appeal is prosecuted.

The first question demanding our consideration relates to the rulings of the court at special term in overruling the demurrer to these several answers; and first in order is the third paragraph of the separate answer of the Citizens' Street Railway Company.

The capital stock in the Citizens' Street Railway Company, owned by Henry H. Catherwood at the time of his death, was personal property. Angell and Ames Corporations (11th ed.) pp. 590-596 (sections 557-560); section 4152, R. S. 1881; 1 R. S. 1876 p. 757, section 10.

Upon the death of Henry H. Catherwood the stock descended to his heirs at law, subject to the right of his administrator to subject the same to sale in the manner prescribed by the laws of the State. The common law right of the administrator to sell and dispose of personal property does not exist in this State. Sales of such property must be made in the manner prescribed by our statutes upon the subject. In the absence of an order from the proper court, the sale must be public, and where a sale is made at private sale under the order of the court, it must be made in substantial compliance with the order. *Weyer* v. *Second National Bank,* 57 Ind. 198; *Williams* v. *Perrin,* 73 Ind. 57; 2 R. S. 1876, section 48, p. 509; 2 R. S. 1876, section 60, p. 512; sections 2275-2289, R. S. 1881.

It is contended by the appellee that in cases of private sales made under the order of the court, no title passes until such sale is reported and approved by the court.

In this position we think he is in error. The statute authorizing the private sale of personal property of the decedent by an administrator is most useful where the property is ⸱ of a perishable nature, such as can best be disposed of in the

public market, or such as would probably be sacrificed at a public sale.

In view of the fact that the courts are not in session in many of the counties of the State more than six months in the year, the construction contended for by the appellee would, in a great measure, destroy the usefulness of the statute. Such a construction would render it inconvenient, if not impossible, to sell in the open market. It would be utterly impossible to sell a stock of goods by retail at private sale, however apparent it might be that a public sale would result in a loss to the estate. We are of the opinion that where the order of the court does not require a confirmation, if the sale is made in substantial compliance with the order of the court, the title passes to the purchaser upon his compliance with the terms of the sale. *Hobson* v. *Ewan,* 62 Ill. 146 ; *Stowe* v. *Kimball,* 28 Ill. 93 ; *Moffitt* v. *Moffitt,* 69 Ill. 649. Doubtless in all cases the court may, in its discretion, require by its order that the sale shall be reported and confirmed in order to pass title to the property. *Williams* v. *Perrin, supra.*

It is also probably true that where there is any material deviation from the order to sell, no title would pass until such sale was reported and confirmed by the court.

In this case, however, there seems to have been no attempt to comply with the order made for the sale of the stock in controversy at private sale.

The sale was on a credit of ten years, whereas the administratrix had no power to give a credit exceeding twelve months. 2 R. S. 1876, p. 510.

The order of the court required the administratrix to take good and sufficient security for the purchase-price of the stock, but, instead of following the order, she took the individual note of John Carlisle, without security. This attempted sale is no better than if there had been no order of the court. The sale to Carlisle on a credit of ten years, without any security, was not a sale under the order procured

by the administratrix, and was, in our opinion, void, and vested no title.

The Citizens' Street Railway Company had notice that the stock in question belonged to, and was a part of, the estate of Henry H. Catherwood. It also had notice that the Marion Circuit Court had acquired jurisdiction over this property, and had made an order to sell the same at private sale. Indeed, the answer discloses the fact that it had examined the proceedings under which the attempted sale to Carlisle was made. We do not think the company exercised that degree of diligence required by the law, when it stopped with the examination of the order of sale. Before cancelling the stock held by the estate of Catherwood it should have gone further, and ascertained whether such a sale had been made under that order as vested title in Carlisle. It was its duty, before cancelling the stock at the request of Carlisle, and issuing to him stock in lieu thereof, to ascertain that he was the owner of the stock in his possession, and having failed to perform such duty we think it liable to make good any loss occasioned thereby. Before the company could lawfully cancel the stock held by Catherwood's estate it was bound to know, not only that an order of sale had been entered by the court, but that a sale had also been made pursuant to the terms of that order. *Nugent* v. *Laduke,* 87 Ind. 482; *Weyer* v. *Second National Bank,* 211, *supra;* Angell and Ames Corporations (10th ed.), section 582; *Loring* v. *Salisbury Mills,* 125 Mass. 138.

In our opinion the Superior Court of Marion county, at special term, erred in overruling the demurrer to the third paragraph of the separate answer of the appellant, the Citizens' Street Railway Company.

The answers of the appellant Johnson present a question entirely different from the one presented by the answer of the Citizens' Street Railway Company.

The certificates of stock owned by the estate of Henry H. Catherwood were cancelled by the company, and a new

certificate in lieu thereof was issued to John Carlisle in his own name. So far as appears there was nothing on the face of the new certificate to put any one on inquiry, or to give notice that it was issued in lieu of the Catherwood stock. In this condition Johnson bought it in the market, without any notice that it had any connection with Catherwood's estate. The question is, therefore, presented as to whether Johnson, under these circumstances, is liable to account to the estate for the stock purchased by him.

Could the appellee show that Johnson, and those through whom he makes his title, had notice of the fact that the Catherwood stock entered into and formed the consideration of the stock purchased by him, doubtless he could follow such consideration, and charge Johnson with it. The complaint seems to proceed upon the theory that it was necessary to charge Johnson with such notice ; but as notice is denied by the answers, in considering the demurrer thereto, we must treat the case as one in which he purchased in good faith, without notice.

We are bound to know that stocks of the kind now under consideration constitute a considerable article of the commerce of the country, and that they are daily bought and sold in the market. To hold that where such stock is thrown upon the market, the purchaser must inquire into the antecedents of the same, and into the consideration upon which it was issued by the corporation, would be to destroy the value of such property as an article of commerce. If the property was offered for sale at a market remote from the office of the company, such inquiry would be practically impossible, and hence the stock, in such market, would be of no value.

We are not inclined to adopt the view that a purchaser of such property is bound to make such examination, unless there is something upon the face of the stock, or something connected with the transaction, to put him on inquiry. Of course everyone purchasing such stock takes the chances as

to whether it is genuine, and as to whether the corporation had the legal authority to issue it, but where the stock is issued by a corporation having the legal authority to do so, is genuine and is regular upon its face, we think a purchaser in good faith, without notice of infirmities which could be ascertained only by an examination of the records of the company, should be protected. *Salisbury Mills* v. *Townsend*, 109 Mass. 115; *Machinists' Nat'l Bank* v. *Field*, 126 Mass. 345; *Mount Holly, etc., T. P. Co.* v. *Ferree*, 17 N. J. Eq. Rep. 117.

But in this case Johnson did not purchase the certificates of stock owned by Catherwood. Those certificates were cancelled by the Citizens' Street Railway Company.

The stock purchased by Johnson was evidenced by new certificates issued to John Carlisle by the company in consideration of the surrender and cancellation of the certificates held by Catherwood at the time of his death. As to whether the company was authorized to issue the certificates purchased by Johnson, and whether they are valid, are questions between him and the company, and one into which we need not inquire in this case.

But as he did not purchase the stock evidenced by certificates once held by Catherwood, and had no notice that such stock ever existed at the time of his purchase, we think it follows that he is in no way liable to Catherwood's estate.

In the case of *Salisbury Mills* v. *Townsend*, *supra*, it was expressly held that a purchaser of such stock was not bound to examine the books of the corporation, or look beyond the certificates assigned to him, in search after the validity of former assignments.

In cases like this, where the old certificates have been surrendered and a new one issued in lieu thereof, the doctrine is that the remedy is against the corporation issuing the new certificate, and that a purchaser of the stock represented by the new certificate in good faith, for value, and without notice of any illegality in the surrender and cancellation of the

original certificates will be protected. *Pratt* v. *Taunton Copper Mfg. Co.*, 123 Mass. 110; *Machinists' Nat'l Bank* v. *Field, supra;* Allen v. *South Boston R. R. Co.*, 15 Am. St. Rep. 185.

In our opinion the court at special term did not err in overruling the demurrer to the third and fourth paragraphs of the answer of the appellant Johnson.

A question is also made as to the ruling of the court at special term in admitting in evidence a report made out and sworn to by the administratrix, in which she states that she had sold the stock in question to John Carlisle for cash.

The report, so far as the evidence in the cause discloses, was never filed or approved by the court. In this condition it amounts to the mere declaration of the administratrix, and constitutes no part of the record in the proceeding to sell the stock. But, assuming without deciding, that it was not proper evidence in the cause, we do not think the appellee, who objected to its introduction, stands in a situation to make such objection. This paper is set out in full in each paragraph of the amended complaint, and is thus made a part of the record in this cause. As it was already a part of the record, and was, as such, before the court, we do not see how the appellee could be injured by allowing the appellants to read it to the court.

In our opinion the superior court, at general term, did not err in reversing the judgment of the special term as to the appellant the Citizens' Street Railway Company, but it did err in reversing the judgment as to the appellant Johnson.

The judgment of the superior court as to the appellant the Citizens Street Railway Company is affirmed, and said judgment as to the appellant Tom L. Johnson is reversed.

Filed Jan. 6, 1891; petition for a rehearing overruled June 11, 1891.