[Civ. No. 10812.   Second Appellate District, Division One.—August 28, 1936.]

E. T. OFF, as Executor, etc., Appellant, v. HENRY P. RUSSELL et al., Respondents.

Frank S. Hutton for Appellant.

Newlin & Ashburn and Paul Sandmeyer for Respondents.

YORK, J.—At the time of her death on April 1, 1934, Clara Maude Reynolds owned 300 shares of corporate stock held by respondent Russell, Miller & Co., stockbrokers, as security for her indebtedness to them in connection with a margin account in her name.   On April 8, 1934, special letters of administration issued to appellant Off, which letters provided that "Edward T. Off is hereby appointed special administrator of the Estate of Clara Maude Reynolds, deceased, with powers as follows: . . . and may sell such

perishable property as the court may order to be sold, and particularly to collect or close out the margin account said deceased had with Russell, Miller & Company''. On the date of their issue, appellant delivered a certified copy of said special letters of administration to respondent company, stating that he desired to sell the stock held in the margin account of deceased, which account upon that date was properly margined. Respondent company declined to accept such order of the special administrator and said special letters as its authority to sell the stock, and requested appellant to furnish an order of court pursuant to provisions of section 771 of the Probate Code authorizing such sale. Thereafter, the account was sold out by respondent company under the margin account agreement executed by deceased in her lifetime, with the exception of 29 shares of National Distillers, leaving a credit of $59 in said account. Meanwhile, appellant had qualified as executor of the last will and testament of said deceased, and on April 19, 1935, brought action against respondent company seeking to recover the sum of $2,785.67, which is the difference between the amount owing to respondents on the margin account and the price of the stock quoted on the date on which appellant presented his special letters of administration with the request to sell the stock held by respondent company. From a judgment entered in favor of respondents, appellant presents this appeal.

This court is asked to decide whether or not the order of the special administrator and, by reason of the wording thereof, the special letters of administration, constituted an order authorizing the sale of the stock, and in such decision to determine whether the nonsale of the stock on April 9, 1934, was wrongful.

Under certain circumstances a special administrator may be appointed ''to take possession of the estate of the decedent and to exercise such other powers as may be necessary for the preservation of the estate'' (sec. 460 of the Probate Code); whereupon the special administrator ''must take possession of all of the real and personal property of the decedent, and preserve it from damage, waste and injury, and must collect all claims, rents and other income belonging to the estate; and for such purpose may commence and maintain or defend suits and other legal proceedings as such administrator. He may sell perishable property and exercise

such other powers as are conferred upon him by his appointment, but, except when the powers, duties and obligations of a general administrator are conferred upon him as hereinafter provided, he is not liable to an action by any creditor on a claim against the decedent. He may obtain leave to borrow money, or to lease or mortgage or execute a deed of trust upon real property, in the same manner as a general administrator.'' (Sec. 463 of the Probate Code.)

Section 771 of the Probate Code provides that stocks or bonds may be sold and title thereto passed without the necessity for confirmation upon obtaining an order of the court. It then provides for filing of petition, the giving of notice (which may be shortened or dispensed with), and also that ''The court shall fix the terms and conditions of sale, and may dispense with notice of sale when the minimum selling price is fixed or when the securities are to be sold upon an established stock or bond exchange.''

In discussing this section, it is said in 11B California Jurisprudence, page 110, section 722: ''It is evident that this section will require construction with certain provisions of the Uniform Stock Transfer Act, by the terms of which an executor or administrator 'duly authorized by law to transfer the certificate' may pass legal title to corporation shares either 'by delivery of the certificate with an assignment indorsed thereon or in a separate instrument signed by' such representative. (Civ. Code, 330.1) . . . If . . . the share certificate duly indorsed by the decedent but remaining in his possession at the time of death came into the possession of the personal representative, such representative by that possession would be the 'apparent owner' with power and apparent legal title to transfer the same to some other *bona fide* purchaser. In that situation Probate Code, section 771, could not operate to vitiate the *bona fide* purchaser's title for want of a court order of sale without contravening the express provisions of the Transfer Act, but the representative would be accountable for the value of the shares and for his doings. . . . Regard must always be had to the rules of stock exchanges, which usually require for sale and transfer of listed shares and bonds certain paper evidences of title in the seller, if he purports to be a representative or trustee. These are not legal requirements, but practically

they must be met or the securities will not be salable or transferable. Buyers of unlisted securities or of listed securities 'over the counter' may also insist on paper evidence of right to sell, and a court order or a certified copy of it and of letters is the usual requirement.

"The statutory provision that stocks and bonds 'may be sold . . . without the necessity for confirmation, upon obtaining an order of court' seems to imply that, like other personalty, they may be sold subject to confirmation without any previous petition and order to sell."

From this it appears to us that section 771, Probate Code, refers to sales of stocks and bonds made by a general administrator, and that even in cases where general powers of administration have been conferred by the court, it is necessary either to petition the court for an order to sell, or to procure order of confirmation of sale. The record herein fails to show any such petition to the court.

Since the powers of a special administrator, in so far as sales are concerned are limited to "perishable property and other personal property which will depreciate in value if not disposed of promptly, or which will incur loss or expense by being kept" (sec. 770 of the Probate Code), we are of the opinion that the direction contained in the letters of appointment, to wit, "and may sell such perishable property as the court may order to be sold, and particularly to collect or close out the margin account said deceased had with Russell, Miller and Company", together with the phrase "and exercise such other powers as are conferred upon him by his appointment", contained in section 463 of the Probate Code, are not broad enough to authorize a sale of the stock here in question, especially in the absence of proof that the said stock was about to depreciate in value at the time the special letters of administration were presented to respondents, and in view of the fact that no petition for any order to sell was ever filed. Therefore, the nonsale of the stock on April 9, 1934, was not wrongful.

The judgment is affirmed.

Doran, J., concurred.

Houser, P. J., dissented.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 26, 1936.