[Civ. No. 7416.   Third Dist.,   June 11, 1948.]

EAST COALINGA OIL FIELDS CORPORATION (a Corporation), Plaintiff and Respondent, v. C. RAY ROBINSON et al., Defendants and Respondents; J. BEN BROWN et al., Appellants.

N. Lindsay South and James C. Janijigian for Appellants.

C. Ray Robinson, in pro. per., W. Eugene Craven and Margaret A. Flynn for Respondents.

PEEK, J.—Separate appeals by separate defendants have been taken from the single judgment entered in this case, the first of which, designated number 7404, is that of Jennie A. McArthur, this day decided, *post*, p. 161 [194 P.2d 561]. The within appeal designated number 7416 is that of defendants J. Ben Brown, Cleone Brown Thompson, and Elsie T. Hawson as executrix of the estate of Henry Hawson, deceased, who claim title to various shares of stock of plaintiff corporation.

By its complaint plaintiff sought to have declared the ownership of its stock and a determination of its rights and duties, alleging that defendants (respondents herein) C. Ray Robinson, Herbert C. O. Clarke, William R. Schwinn, Leona Schwinn, Lottie Kelley and Winfred R. Schwinn are the only stockholders of record of its issued and outstanding stock of five shares; that no other shares had been issued, and that appellants, some of whom were designated by fictitious names, claimed some right, title or interest in or to the stock of plaintiff and demanded additional shares of stock be issued to them. The complaint alleged no defendant other than those designated as stockholders of record on the books of the corporation had any right, title or interest in the stock.

Respondents by their separate answers and cross-complaints admitted the material allegations of the complaint and denied that any controversy existed between them or that they claimed additional shares. Their cross-complaints contained substantially the same material as the allegations of the complaint. They likewise prayed that the other defendants be required to appear and that their adverse claims be determined; that respondents' title be quieted as against all adverse claims of the other defendants, and that such other defendants be enjoined from asserting any adverse claims thereto. All of the appellants answered denying the allegations of the complaint and cross-complaints, affirmatively alleging their title to such shares, and praying that title be quieted in them. At the conclusion of the hearing, the court found in favor of plaintiff corporation and respondents on each issue, and entered judgment accordingly, declaring the rights of the respondents Robinson et al., and decreeing that appellants take nothing.

The appellants J. Ben Brown and Cleone Brown Thompson contend that they are the owners of fractional interests in the one share of stock represented by certificate number 8 by reason of an assignment of such fractional interest to Brown by a separate instrument in writing dated September 29, 1921, executed by the then owner thereof, one W. J. Barnhart. The evidence is uncontradicted that no certificate of stock was ever issued to Brown and that the transfer was never entered upon the books of the corporation. Certificate number 8 was subsequently transferred to Henry Hawson on January 29, 1929, and after his death was included in the assets of his estate. Brown testified that when the instrument of assignment to him was acknowledged before Hawson, who was then secretary of the corporation and a notary public, Hawson stated, " 'I will see that this is recorded on the books of the company, and that it will be entered on the minutes of the next regular meeting.' " The discussion in appeal number 7404 (*post*, p. 161 [194 P.2d 561]) with respect to passage of title to Hawson of the share represented by certificate number 5 claimed by Jennie McArthur is equally applicable to this transaction, and for the reason therein stated, Hawson, having had actual knowledge of the prior assignment took, subject to the superior equities of Brown, a fractional interest in the share represented by certificate number 8. The only questions remaining concern the validity of the sale of the stock by the executrix of Hawson's estate and the rights of subsequent purchasers.

In connection with the shares represented by certificates 5, 8, and 10 standing in the name of Henry Hawson, it appears that on February 28, 1936, Elsie Hawson, as executrix of said estate, by endorsement assigned the same to George Schwinn. It is undisputed that no order was obtained from the probate court authorizing such transfer or sale as provided by Probate Code, section 771 and that there was no confirmation of said sale under Probate Code, section 755.

The question then on this issue in the case is whether title passed to George Schwinn under such circumstances, assuming that he had no knowledge of such defect and made no inquiry concerning the authority of the executrix to make the sale.

Respondents, in support of their contention that the endorsement validly passed title to the purchaser, rely upon Civil Code, section 330.1, subdivision (c), which at the time of the transfer provided that:

"Title to a certificate and to the shares represented thereby can be transferred . . . (c) By delivery of the certificate with an assignment endorsed thereon or in a separate instrument signed by the . . . executor . . . or other person duly authorized by law to transfer the certificate on behalf of the person appearing by the certificate to be the owner of the shares represented thereby."

There can be no doubt that an executor is authorized to transfer shares by endorsement and delivery, provided that he is otherwise vested with such power. However, in determining whether an executor may so transfer title without prior authorization from the probate court or whether title will pass to the purchaser without a subsequent confirmation, section 330.1 must be read in connection with section 330.2 which provided that:

"Nothing in the transfer act shall be construed as enlarging or diminishing the powers of an . . . executor or administrator . . . to make a valid indorsement, assignment or power of attorney."

It would appear that the last-quoted section can only be taken to mean that the power of an executor to transfer a valid title should not be affected by the passage of the act but would remain the same as it previously existed under the statutes and decisions until changed by the Legislature.

Probate Code, sections 755 and 771 at the time of the transfer herein of certificates numbered 5, 8 and 10 by Elsie Hawson, as executrix, read:

"Sec. 755: Except as provided by sections 770 and 771 of this code, all sales of property must be reported to the court and confirmed by the court before the title to the property passes. . . ."

"Sec. 771: Stocks . . . may be sold and title thereto passed without the necessity for confirmation, upon obtaining an order of the court . . ."

The only case cited by respondents in support of their contention that the transfer was valid, although no prior order of court was obtained or confirmation had, is *Aronson* v. *Bank of America etc. Assn.,* 9 Cal.2d 640 [72 P.2d 548]. A reading of that case, however, reveals that it is not in point on the question of passage of title. It arose on a demurrer to the complaint in an action by the sole heirs of an estate against the corporate defendant for damages for conversion of property of the heirs resulting from the acts of the corporation

in canceling old certificates standing in the name of deceased on the endorsement of one or both of the administrator's of said estate and issuing new certificates therefor, which certificates were then held in the estate as an asset thereof. In passing upon the question so presented the court held that although under the existing code sections title would not pass until the sale was sanctioned by the court and therefore title would remain in the estate, nevertheless there was no statutory provision requiring proof of confirmation of the sale before a transfer could be made on the books of the corporation. Thus as the new certificates were held by the administrators for the use and benefit of the plaintiff heirs the only question was the propriety of the transfer on the books of the corpora-. tion, which transfer the court found was not prohibited by any of the existing applicable statutes.

Respondents in their brief further contend that upon the death of Henry Hawson his executrix became the "apparent owner" of the certificates and as such could transfer them to innocent purchasers for value without notice of any defect. In setting forth this argument, respondents apparently have drawn upon the language used in 11B California Jurisprudence, section 722 at page 111, wherein the writer of that text cites as examples of "apparent ownership" situations where the stock stands in the name of the executor or administrator or where the stock has been endorsed in blank by the owner before his death and subsequently comes into the hands of the executor or administrator. Obviously in such cases the executor or administrator being the holder of a. bearer instrument could transfer title to an innocent purchaser (Civ. Code, §§ 330.5, 330.6). But such is not the situation here. The certificates stood in the name of Henry Hawson, unendorsed.

The executrix not being the apparent owner of the shares of stock it is clear under the authorities in this state that no title passed to the purchaser thereof without confirmation or prior order of the court. (*Wickersham* v. *Johnston,* 104 Cal. 407 [38 P. 89, 43 Am.St.Rep. 118] ; *Bovard* v. *Dickenson,* 131 Cal. 162 [63 P. 162] ; *Wells Fargo & Co.* v. *McCarthy,* 5 Cal.App. 301 [90 P. 203]. See, also, *Off* v. *Russell,* 16 Cal.App.2d 337 [60 P.2d 331].)

George Schwinn having purchased the shares directly from the executrix was charged with notice that the sale was not authorized by a prior order and that no title would pass until confirmed as provided in Probate Code, section 755. As a participant in such transaction he cannot now plead inno-

cence and good faith when the slightest investigation would have dispelled any ignorance thereof. (*Interstate Public Service Co.* v. *Weiss*, 208 Ind. 122 [193 N.E. 226] ; 12 Fletcher Cyc. Corp., § 5548; see *Wickersham* v. *Johnston, supra.*) Hence any rights subsequently acquired cannot rest upon an assertion of title in George Schwinn as against the estate of Henry Hawson or any superior rights to which the latter is subject. Nothing in the case of *Aronson* v. *Bank of America etc. Assn., supra,* conflicts with this conclusion but on the contrary the language of that decision supports such a result.

■ The executrix being without power to make an absolute sale without prior order of court or subsequent confirmation, her acts in such representative capacity could only clothe George Schwinn with the indicia of ownership by an endorsement of the certificates (Civ. Code, § 330.19) and delivery to him. Thus no title vested in George Schwinn as against the estate by reason of the invalid sale of the stock by the executrix. Nevertheless, due to the peculiar characteristics of negotiable instruments, into which class stock certificates have been placed by the Uniform Stock Transfer Act, an unimpeachable title may be transferred and vested in an innocent purchaser for value and without notice by one having no title himself. Therefore it becomes necessary to determine whether under the facts so far as disclosed by the record herein respondent Robinson, the present record holder of the shares, is shown to be such a holder.

■ The record shows that certificates numbered 5 and 10 were surrendered to the corporation by the respective parties who purchased them from George Schwinn and that respondent Robinson acquired title thereto by virtue of the subsequent transfer to him of new certificates issued in lieu of numbers 5 and 10. There was thus nothing appearing upon the face of these certificates themselves which would give notice of any prior illegal sale or that the shares had ever been included in the assets of any estate. Under similar circumstances it has been held that such a purchaser, without actual notice, acquires title to the shares as against any rights of the estate even though the executor's sale was illegal and void. (*Citizens' Street Ry. Co.* v. *Robbins,* 128 Ind. 449 [26 N.E. 116, 25 Am.St.Rep. 445, 12 L.R.A. 498].) It would follow that respondent Robinson acquired a good title to those shares if there is any evidence to support a finding of good faith and lack of actual notice.

■ As to certificate number 8, this certificate having been endorsed by Elsie T. Hawson, as executrix, to George Schwinn, was not surrendered and a new certificate issued but was transferred to one Charles E. Phillips who, in turn transferred it to respondent Robinson. While the certificate indicated the fact that it had been endorsed by the representative of an estate in her capacity as such, this fact would not impart constructive notice of any defect in the transfer or impose upon one not a party to the executrix's sale a duty to investigate the circumstances of the transfer if the endorsement was regular on its face. (*Aronson* v. *Bank of America etc. Assn., supra.*) The only question then is whether there was actual notice of the void sale on the part of Robinson or those through whom he claims title.

■ Respondent Robinson on appeal relies upon an alleged presumption that he acquired the certificate without notice of any defect in title, citing the Uniform Negotiable Instrument Act (Civ. Code, § 3140), which reads:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. . . ."

In so contending said respondent rests upon the presumption contained in the first clause of said section, and argues that the title of no person who negotiated the instrument was defective. But by reason of the latter portion of said section, which respondent has failed to consider, and the evidence which shows that Henry Hawson acquired no title as against prior assignees, and that George Schwinn acquired no title on his own behalf as against the estate but was merely vested with apparent indicia of title by the representative, the argument must fail if the rule is at all applicable here as in the case of a negotiable note. (*Berger* v. *Steiner*, 72 Cal.App.2d 208 [164 P.2d 559].)

While no section comparable to said section 3140 is contained in the Stock Transfer Act, no reason appears why the same rule should not be applicable to the case of stock certificates as to negotiable instruments. We conclude that since prior holdings in the chain of title were shown by the evidence to have been defective, under the provisions of said section the burden was placed upon said respondent to go forward and produce evidence of good faith and lack

of notice. Although the record herein is otherwise sufficient to support the judgment it discloses no affirmative evidence whatever on the issue of good faith, payment of value, or notice on the part of respondent Robinson concerning the void sale by the executrix or the claims of other parties to the shares of stock. The only evidence offered by respondents consisted of the records of the corporation and a stock certificate. It necessarily follows that the finding of the trial court that the certificates of stock held by respondents were acquired by them in good faith, for value, and without notice is therefore unsupported by any evidence in the record. Evidence cited by appellants to the effect that Robinson did have notice after purchasing the stock is beside the point.

For the foregoing reasons the case must be reversed in order that upon a retrial the cause may be properly determined in accordance with the views herein expressed, and it is so ordered.

Adams, P. J., and Thompson, J., concurred.