**CHEVRON, U.S.A., INC., Plaintiff,**

v.

**UNITED STATES of America; William H. Bazinett, individually; William H. Bazinett, as Executor of the Estate of Catherine L. Bazinett; William H. Bazinett, as Executor of the Estate of Joseph H. Bazinett; and Leonard Hesterman, Defendants.**

**UNITED STATES of America, Cross-claimant/Appellant,**

v.

**Leonard HESTERMAN, Cross-claimant/Defendant-Appellee.**

**No. 82–4090.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 1983.

Decided May 17, 1983.

As Amended on Denial of Rehearing July 6, 1983.

William Estabrook, Dept. of Justice, Washington, D.C., for cross-claimant/appellant.

James F. Matthews, Matthews & Marzulla, San Jose, Cal., for cross-claimant/defendant-appellee.

Before GOODWIN, TANG, and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

The United States claims rental income from a gas station leased to Chevron

U.S.A., Inc., in satisfaction of gift and estate taxes owed by the estates of Catherine and Joseph Bazinett. Leonard Hesterman purchased the property and the right to payments under the lease from William Bazinett, the executor of both estates. On May 18, 1979, Chevron instituted this interpleader action in California Superior Court to determine whether the United States or Hesterman was entitled to accrued rental payments totaling approximately $25,000. The government removed the action to federal district court pursuant to 28 U.S.C. § 1444 and filed a cross-claim against Hesterman for an accounting and for $18,541.39 which Hesterman had already received from Chevron. The district court ruled that the government had no right to income generated by the property under its general liens for gift taxes pursuant to 26 U.S.C. § 6321 [1] or its special estate tax liens deriving from 26 U.S.C. § 6324(a)(1).[2] We reverse.

### FACTS

William Bazinett is the sole heir and executor of the estates of his parents, Catherine and Joseph, who died on September 25, 1970, and May 4, 1971, respectively. On December 4, 1972, the Internal Revenue Service made assessments against both estates for gift taxes. Notices of lien were filed on March 22, 1973. These notices were refiled on July 16, 1979, several months after the expiration of the period for refiling authorized under 26 U.S.C. § 6323(g)(3)(A).[3] The Internal Revenue Service also assessed estate taxes against the two estates in the spring of 1975.

---

1. 26 U.S.C. § 6321 states:

    If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

2. 26 U.S.C. § 6324(a)(1) provides:

    Unless the estate tax imposed by chapter 11 is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the dece-

    dent for 10 years from the date of death, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien.

3. 26 U.S.C. § 6323(g)(3) reads in part as follows:

    In the case of any notice of lien, the term "required refiling period" means—
    (A) the one-year period ending 30 days after the expiration of 6 years after the date of the assessment of the tax ...

A gas station located in Calaveras County was an asset of both estates. In 1971 William Bazinett filed a petition on behalf of each estate with the probate court requesting permission to lease the gas station to Standard Oil of California, Inc., Chevron's predecessor in interest. The court granted both petitions. In July 1974, upon gaining the approval of the probate court, William executed a deed of trust and assignment of rents from the gas station in favor of the United States to secure payment of $47,206.22 in gift taxes owed by the two estates. In return the government agreed to forbear from foreclosing on the two liens effective against the property as a result of the gift tax liabilities. On January 8, 1975, William conveyed the property to Hesterman along with an assignment of the rights of each estate under the lease agreement. William did not obtain the consent of the probate court for either part of this transaction.

Standard Oil began to make payments to Hesterman which continued until July 29, 1977, when the government notified the company of its conflicting claim. On that date Hesterman received a notice of levy and demand for payment of government funds in his hands belonging to the Bazinett estates. Hesterman responded to the notice by advising the government that he did not have in his possession any assets belonging to the subject estates. On September 8, 1977, the government served Hesterman with a final demand for the estate of Catherine Bazinett. Service of a final demand for Joseph's estate, together with additional notices of levy for both estates, occurred on October 28, 1977.

## ANALYSIS

■ 1. *Enforcement of the government's liens to recover gift taxes.* Section 6331(a) of the Internal Revenue Code provides that the government may collect funds from any person liable to pay taxes "by levy upon all property and rights to

property . . . belonging to such person or on which there is a lien provided in this chapter for payment of such tax." There would be no question concerning the government's right to the rental payments had it refiled its notices of lien within the statutory time limit. The consequence of untimely refiling is that the notice of lien is treated as originally filed on the date of refiling. 26 U.S.C. § 6323(g)(1). While this does not affect a lien's validity, "it nullifies the effect of the prior filing of the notice of the tax lien." S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad.News 3722, 3733. Here the district court concluded that as a result of the late refiling the government lost its priority position with respect to Hesterman, whom the court deemed a bona fide bargain purchaser pursuant to 26 U.S.C. § 6323(a).[4] We disagree. The untimely refiling was immaterial because the IRS attempted to collect the taxes by levy during the life of the initial liens and issued its notice of levy "within 6 years after the assessment of the tax." 26 U.S.C. § 6502(a)(1).

In *American Acceptance Corp. v. Glendora Better Builders, Inc.,* 550 F.2d 1220 (9th Cir.1977), the government served notices of levy upon a taxpayer's employer in 1970, 1971, 1972, and 1973 based upon a lien for uncollected taxes filed in 1968. The employer made no response. In 1972 the government mistakenly released the lien. Before it could revoke the release, American Acceptance served the employer with a writ to garnish $27,000 in wages owed the taxpayer. We held that since the levy operated as a seizure, there was no need for the government to maintain a security interest through a lien. The government's rights were thus unaffected by the subsequent release of the lien. *Id.* at 1223. Here the government's position is even stronger. Hesterman obtained the property while the March 1973 liens for gift taxes were still in effect. He had notice of the IRS liens when he purchased the gas station and was in possession of property in which the

---

**4.** 26 U.S.C. § 6323(a) states in relevant part: "The lien imposed by section 6321 shall not be valid against any purchaser . . . until notice thereof which meets the requirement of subsection (f) has been filed by the Secretary or his delegate."

government had a valid security interest when the levy was made.

2. *Enforcement of the government's liens to recover estate taxes.* The district court ruled that the government had no claim for estate taxes under the special estate tax lien provided in 26 U.S.C. § 6324. This lien against property in an estate attaches upon the death of a decedent without the filing of a notice of lien and continues for ten years. *See Detroit Bank v. United States,* 317 U.S. 329, 335, 63 S.Ct. 297, 300, 87 L.Ed. 304 (1943). Relying upon *United States v. Cleavenger,* 325 F.Supp. 871 (N.D.Ind.1971), *aff'd,* 517 F.2d 230 (7th Cir.1975), the district court found that the government's lien against each estate had lapsed since the Internal Revenue Service failed to obtain a judgment foreclosing on the liens within the statutory time limit. The *Cleavenger* court held that the ten-year period specified in 26 U.S.C. § 6324(a)(1) constituted the duration of the special estate tax lien and not a period of limitations tolled by the filing of a suit to enforce the lien in district court. 325 F.Supp. at 874–76. Here, however, the government gave notice of levy and made a demand for payment pursuant to 26 U.S.C. § 6331(a) in July 1977, well before the lien against either estate lapsed. The issue is whether the government is entitled to enforce its special estate tax liens in this manner, as well as through the judicial proceedings contemplated by the district court.

In *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), the Supreme Court ruled that a tax levy creates a "custodial relationship" between the holder of the subject property and the United States, reducing the property to the "constructive possession" of the government. *Id.* at 334, 95 S.Ct. at 1731. The Court declared that "notice of levy and demand are equivalent to seizure." *Id.* at 337, 95

S.Ct. at 1732; *see Matter of Pittsburgh Penguins Partners,* 598 F.2d 1299, 1302 (3d Cir.1979); *American Acceptance Corp. v. Glendora Better Builders, Inc.,* 550 F.2d 1220, 1222 (9th Cir.1977).

■ Hesterman seeks to limit the statements in *Phelps* by asserting that they extended only to the bankruptcy court's summary jurisdiction powers under section 2(a)(7) of the Bankruptcy Act, 11 U.S.C. § 11(a)(7) (1976) (repealed 1978), and not ownership rights. He distinguishes *American Acceptance* on the ground that our holding in that case related solely to the effect of the government's levy on the claims of a competing lienholder. Hesterman points to several rights which an owner possesses following a tax levy which are inconsistent with the government's position that its notice of levy is sufficient to perfect its lien against a purchaser of property.[5] His argument is not without force. *Compare United States v. Whiting Pools, Inc.,* 674 F.2d 144, 156–60 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982), *with Phelps,* 421 U.S. at 337 & n. 8, 95 S.Ct. at 1733 & n. 8, *and Cross Electric Co. v. United States,* 664 F.2d 1218 (4th Cir.1981). Nevertheless, we do not decide the question because William Bazinett did not convey to Hesterman a purchaser's right of ownership. The sale of the gas station and assignment of the lease were invalid because Bazinett failed to obtain the probate court's approval of the transaction.

Section 755 of the California Probate Code states in relevant part: "Except as provided by Sections 770, 771, and 772, all sales of property shall be reported to the court and confirmed by the court before title to the property passes...." Neither the real property itself nor the lease qualify for the statutory exemptions to the confirmation requirement given to perishable property or other personal property which

---

**5.** The indicia of ownership Hesterman enumerates are:

The right to receive notice of the seizure and notice of the impending sale of the property pursuant to 26 U.S.C. § 6335; the right granted by 26 U.S.C. § 6337(a) to pay any sum due to the IRS before sale and retain

ownership of the property; the ability under 26 U.S.C. § 6337(b) to redeem the property within 120 days of the sale; and the right under 26 U.S.C. § 6342 to receive any surplus remaining after the cost of the sale and the sum due the IRS have been subtracted from the proceeds of the sale.

will depreciate if not disposed of rapidly, Cal.Prob.Code § 770; securities, Cal.Prob. Code § 771; or tangible personal property sold at public sale, Cal.Prob.Code § 772.

The district court cited *In re Estate of Spirtos,* 34 Cal.App.3d 479, 109 Cal.Rptr. 919 (2d Dist.1973), and *In re Hilde's Estate,* 112 Cal.App.2d 189, 246 P.2d 79 (2d Dist.1952), for the proposition that the only effect of failure to obtain confirmation of a sale is to surcharge the executor. However, in neither of these cases were the sales challenged by a party claiming a superior interest in the transferred property.

The plain language of section 755 indicates that a sale of property is not valid unless authorized by the probate court. California case law supports this reading. In *East Coalinga Oil Fields Corp. v. Robinson,* 86 Cal.App.2d 153, 194 P.2d 554 (3d Dist.1948), the executrix of an estate assigned shares of stock without a court order under Cal.Prob.Code § 771 or confirmation under Cal.Prob.Code § 755. Ruling the sale void, the court held that where the shares were in the name of the deceased there was no title vested in the purchaser as against the estate. *Id.* at 158, 194 P.2d at 557. Hesterman claims that his case is distinguishable because William Bazinett transferred record title from the estates to himself and caused the rental payments to be paid to him personally rather than in his capacity as executor. He relies upon language in the *East Coalinga* opinion indicating that if the executrix had been the apparent owner of the stock certificates, she could have transferred title to an innocent purchaser. However, the California court qualified its decision only because of the need to preserve the negotiability of stock certificates. *Id.* Having purchased real property and the right to rental payments from the executor of an estate, Hesterman is charged with notice that no title would pass until the probate court confirmed the sale. Hesterman "cannot now plead ignorance and good faith when the slightest investigation would have dispelled any ignorance thereof." *Id.* at 158–59, 194 P.2d at 557. Further, California cases indicate that the manifest purpose of having the probate court supervise sales of property is "to protect decedent's estate from abuse of executorial discretion." *In re Estate of Quackenbush,* 53 Cal.App.3d 751, 755, 125 Cal.Rptr. 832, 835 (4th Dist.1975), *quoted in Estate of Patterson,* 108 Cal.App.3d 197, 206, 166 Cal.Rptr. 435, 441 (1st Dist.1980). We interpret this language to include the interests of creditors as well as beneficiaries of an estate. The sale to Hesterman could not prevent the government from effectively foreclosing upon its liens through levy.

■ Hesterman contests the ability of the government to challenge the validity of the transaction at this point, but his arguments lack merit. The government is not bound by state statutes of limitations or laches in enforcing its rights. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *United States v. First National Bank,* 652 F.2d 882, 890 (9th Cir.1981); *United States v. Weintraub,* 613 F.2d 612, 618–19 (6th Cir. 1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). Nor should the government, which played no role in the transfer of the estate property, be estopped from arguing that the sale was void. *See Simon v. Califano,* 593 F.2d 121, 123 (9th Cir.1979).

■ Finally, Hesterman argues that the government cannot enforce its special estate tax lien against the estate of Joseph Bazinett because its assessment for estate taxes was not made within three years after the return was filed pursuant to 26 U.S.C. § 6501(a). However, that section has no bearing on the government's enforcement of the lien provided by section 6324(a)(1). We recently stated: "It is clear that a special estate tax lien attaches at the time of decedent's death without necessity for assessment or demand." *United States v. Vohland,* 675 F.2d 1071, 1074 (9th Cir.1982) (citing *Detroit Bank,* 317 U.S. at 332, 63 S.Ct. at 298).

REVERSED.